**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **V.** | : | **Criminal No.: 1:09-CR-047** |
| | : | **Sentencing: September 4, 2009** |
| **HENRY UCHENNA OBILO** | : | **Judge: T.S. Ellis, III** |
| | : | |
| **Defendant.** | : | |
| | : | |

**<u>POSITION OF THE DEFENDANT WITH RESPECT
TO SENTENCING FACTORS</u>**

**COMES NOW**, Defendant, **HENRY UCHENNA OBILO**, by and through John O. Iweanoge, II, and THE IWEANOGES FIRM, P.C., his attorneys and submits this position of the defendant with Respect to Sentencing Factors, pursuant to this Court's policy regarding procedures to be followed in Guidelines Sentencing, and in accordance with Section 6A1.2 of the United States Guidelines. Mr. Obilo respectfully asks this Court to impose a sentence that complies with 18 U.S.C. § 3553(a) on the primary basis that the advisory guideline range is not a fair range because of the disparity in sentence resulting from over representation of Henry Uchenna Obilo's criminal history category.

**<u>DEFENDANT'S OBJECTIONS TO "PSR"</u>**

**A.      Defendant objects to being held accountable for loss exceeding co-defendants**

Defendant Obilo objects to the intended loss of $2.7 million used by the Presentence writer in calculating the advisory guideline range in this case. This amount is in disparity to other co-defendants alleged to be in the same conspiracy. By way of example, Ezenwa Onyedebelu's loss amount is more than $200,000.00 but less than $400,000.00; Abel Nnabue's loss amount is more than $400,000.00 but less than $1 million; Paula Gipson's loss amount is more than $200,000.00 but less than $400,000.00; Daniel Orjinta's loss amount is more than $400,000.00

but less than $1 million to name but a few. The Presentence writer tries to justify her $2.7 million from an alleged uncharged conspiracy that is unrelated to the present matter before this Court that are nothing more than unreliable allegations which shall not be considered. *United States v. Ortiz*, 993 F.2d 204 (10th Cir. 1993).

Additionally, § 1B1.3, Relevant Conduct, instructs the Court to determine the base offense level and the specific offense characteristics on the basis of: 1) "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant"; and 2) "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction…" U.S.S.G. § 1B1.3(a)(1)(A)-(B). In other words, a defendant can be sentenced based on his own conduct under § 1B1.3 (a)(1)(A) as well as the conduct of others under § 1B1.3(a)(1)(B). However, in order to determine the defendant's accountability for the conduct of others, the Court must first determine the scope of the criminal activity that the defendants agreed to jointly undertake. Once that is determined, the Court must find which acts or omissions of others were reasonably foreseeable to Mr. Obilo and if they were in furtherance of the jointly undertaken activity. See *United States v. Gilliam*, 987 F.2d 1009, 1012-13 (4th Cir. 1993)(the acts must have been within the scope of the defendant's agreement). "The objective of ensuring fairness in sentencing precludes the automatic application of a principal offender's base offense level to a defendant convicted of aiding and abetting the commission of the underlying offense. The guidelines require a sentencing Court to treat the aider and abettor as though he or she committed the underlying offense; not as though he or she and the principal offender are the same person." *United States v. Hendrick*, 177 F.3d 547, 551 (6th Cir. 1999).

The Application Notes to § 1B1.3 give several illustrations of conduct for which the defendant is accountable according to the advisory guidelines. For example, in illustration number 1, "Defendant D pays Defendant E a small amount to forge an endorsement on an $800 stolen government check. Unknown to Defendant E, Defendant D then uses that check as a down payment in a scheme to fraudulently obtain $15,000 worth of merchandise. Defendant E is convicted of forging the $800 check and is accountable for the forgery of this check under subsection (a)(1)(A). Defendant E is not accountable for the $15,000 because the fraudulent scheme to obtain $15,000 was not in furtherance of the criminal activity he jointly undertook with Defendant D (i.e., the forgery of the $800 check)." U.S.S.G. § 1B1.3 comment. (n. c1). Also, in illustration number 7: "Defendant R recruits Defendant S to distribute 500 grams of cocaine. Defendant S knows that Defendant R is the prime figure in a conspiracy involved in importing much larger quantities of cocaine. As long as Defendant S's agreement and conduct is limited to the distribution of the 500 grams, Defendant S is accountable only for that 500 grams amount (under subsection (a)(1)(A)), rather than the much larger quantity imported by Defendant R." U.S.S.G. § 1B1.3 comment. (n. c7). The Governments requested $2.7 million loss calculation and basis thereof is essentially captured on paragraph 2, page 5 of its sentencing memorandum wherein Mr. Obilo should be punished for exercising his constitutional right.

In this case Mr. Obilo should only be accountable for the criminal activity that was reasonably foreseeable and arising from the scope of the criminal activity that he agreed to jointly undertake, which does not suggest $2.7 million but only suggests intended loss involving U.S. Senate Federal Credit Union and State Department Federal Credit Union in EDVA. As the above examples illustrate, even if the Court determines that Mr. Obilo was fully aware that Tobechi Onwuhara and company was involved in much more, as long as Mr. Obilo's agreement

and conduct was limited as the governments sentencing memorandum illustrates on pages 7-9, paragraphs a-k its either the amount is unconfirmed or its guilt by association. See *Ortiz* at 204.

**B.      Defendant objects to Role in the offense enhancement**

Defendant objects to the leadership role enhancement for supervisory role pursuant to U.S.S.G.   § 3B1.1(b). In relevant part, application note 2 to § 3B1.1 states "to qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization." No other defendant in this case including but not limited to Ezenwa Onyedebelu, Abel Nnabue, Paula Gipson, Daniel Orjinta to name but a few received any aggravating role adjustment in this case. By way of background in the application notes this adjustment is included because of concerns about relative responsibility and in that regard the testimony at trial by the lead law enforcement agent in this case, Det. Charles Park under oath at trial contrary to the governments unreliable allegations is that he could not trace any money going from any co-conspirator in this case to Mr. Obilo. In that regard, the unreliable allegations of distribution and percentages by the government should not be considered. See *Ortiz* at 204.

To the contrary, defendant Mr. Obilo submits that he is deserving of a downward departure in his offense level based upon minimal/minor participation pursuant to USSG §3B1.2 and incorporates Det. Charles Park's trial testimony as if fully set forth herein. Specifically, he submits that the probation officer should characterize him as a "minimal participant" under that section of the guidelines, which will entitle him to a four-level decrease pursuant to USSG § 3B1.2(a). The sentencing guidelines provide for adjustments to a defendant's offense level for the role played in committing the offense of conviction, based upon an examination of all relevant

conduct. USSG Ch. 3 Pt. B. The mitigating role provision allows for a four or two-point decrease, respectively, in offense level if a defendant is found by the District Court to be a "minimal" or "minor" participant in the criminal offense. USSG § 3B1.2(a) & (b).

As the Sentencing Commission explained in its application notes to this section of the guidelines, subsection (a) applies "to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group." USSG § 3B1.2, comment. (n.1). The "minimal participant" reduction was intended for "infrequent" use, as in the case of defendant Mr. Obilo who "only accompanied the more culpable co-defendants.

This Circuit has upheld a District Court's decision to classify a defendant as a "minor participant" pursuant to USSG § 3B1.2(b) (rather than a "minimal participant" pursuant to § 3B1.2(a)) based upon its conclusion at sentencing that the defendant's "full 'understanding of the scope and nature of the enterprise' precluded a designation of minimal participant status." *United States v. Davis*, 878 F.2d 1299, 1300 (11th Cir.), *cert. denied,* 493 U.S. 941 (1989). Therefore, the Court should designate defendant Mr. Obilo as a "minimal participant" because it is amply supported by the record, and is clearly erroneous not to do so. *Id.;* see *Davis,* 878 F.2d at 1300.

### C.    Defendant objects to Obstruction of Justice enhancement

Defendant objects to the Presentence writer's enhancement for obstruction of justice based on different recollections of events that are not materially or substantially different between Mr. Obilo who was in New York on pre-trial supervision and Mr. Onyedebelu who was in Dallas with another individual whose case was dismissed, Mr. Onwumere. Mr. Obilo's recollection of the phone call which was corroborated by Mr. Onyedebelu was that Mr. Onwumere had called Mr. Obilo and at some point handed the phone to Mr. Onyedebelu. Mr. Obilo's recollection of the phone call that he did not initiate based on this Court's order is that he

asked who was on the line and as soon as Mr. Onyedebelu identified himself he advised him that

he cannot speak to him pursuant to his release conditions. Mr. Onyedebelu's recollection is that

Mr. Obilo asked him if he was going to testify against him and if he did not testify against him

he could not be found guilty. There is no information from the third person present that is Mr.

Onwumere as to what was said by either party to this conversation. The government now

vouches for Mr. Onyedebelu's credibility and asked the Court to credit same which defies logic.

First, Abel Nnabue and Paula Gipson testified at Mr. Obilo's trial and the government had other

witnesses with cooperation agreements to testify and could have tried Mr. Obilo with or without

Mr. Onyedebelu's testimony which was contradicted by Det. Park in terms of money going from

any of the co-conspirators to Mr. Obilo. Second, Mr. Onyedebelu that the government is asking

the Court to believe over Mr. Obilo is the same person in their April 2, 2009 *Giglio* disclosure

that they advised that "on or about November 20, 2008 Ezenwa Onyedebelu acknowledged that

he had been communicating with Tobechi Onwuhara by telephone since shortly after

Onyedebelu's arrest on August 1, 2008. In prior debriefings, Onyedebelu had not disclosed his

post arrest communications with Onwuhara" who is the alleged leader of this conspiracy. Third,

the lawful ownership of a firearm protected by the 2nd Amendment does not give an inference of

threat or intimidation especially when the individuals are thousands of miles away and

individuals that commit crimes with firearms generally are not lawful owners of firearms.

Finally, the government is incorrect that there are three separate occasions that defendant

obstructed justice. The application notes to § 3C1.1 note 3 states "obstructive conduct can vary

widely in nature, degree of planning, and seriousness. Application Note 4 sets forth examples of

types of conduct to which this adjustment is intended to apply. Application Note 5 sets forth

examples of less serious forms of conduct to which this enhancement is not intended to apply

…"

The Court is required to impose a sentence that is sufficient but not greater than necessary to comply with 18 USC § 3553(a) which outlines the factors to be considered when imposing a sentence. These purposes include the necessity for the sentence: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. The Court shall also consider the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed.

## ARGUMENT

In two recent summary reversals, the Supreme Court expressed in no uncertain terms that the Guidelines cannot be used as a substitute for a sentencing Court's independent determination of a just sentence based upon consideration of the statutory sentencing factors spelled out in 18 U.S.C. § 3553(a). *Nelson v. United States*, 129 S. Ct. 890 (2009); *Spears v. United States*, 129 S. Ct. 840 (2009). The Court's decisions in *Nelson* and *Spears* build upon its earlier decisions in *Kimbrough v. United States*, 552 U.S. 85 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), establishing that the Sentencing Guidelines are simply an advisory tool to be considered alongside the other §3553 statutory considerations.

Courts must consider the recommended guideline range as one of seven co-equal statutory sentencing factors enumerated in 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220, 259-60 (2005). Upon consideration of those factors, a sentencing court may find that the case falls outside the "heartland" contemplated by the guidelines, or that "the guidelines sentence itself fails properly to reflect the § 3553(a) considerations," or that "the case warrants a different sentence regardless." *Rita v. United States*, 551 U.S. 338, 351 (2007) (emphasis added).

Furthermore, the United States Supreme Court has stated that a criminal sentence can have a variety of justifications, such as incapacitations, deterrence, retribution, or rehabilitation. See *Ewing v. California*, 538 U.S. 11, 123 S. Ct. 1179, 155 L.Ed.2d 108 (U.S. 03/2003; quoting from 1 W. Lafave & A. Scott, Substantive Criminal Law §1.5, pp. 30-36(1986)(explaining theories of punishment).

### Determining a Sentence After *Booker*

As a result of the Supreme Court's ruling in *United States v. Booker*, 125 S.Ct. 738 (2005), the sentencing guidelines are now "efficiently advisory" in all cases. *Id* at 757. The result is that a District Court must now "consider Guidelines ranges, "but may "tailor the sentencing in light of other statutory concerns as well." *Id*.

Sections 3553(a) has been described in *Booker* and much *Post-Booker* case law as containing various "factors" - one of which is the Sentencing Guidelines and the guidelines range calculated pursuant to them-that must now be considered in determining a sentence. This is a potentially misleading over simplification. Section 3553(a) is actually comprised of two distinct parts: the so-called "sentencing mandate" contained in the prefatory clause of Section 3553(a), and the "factors" to be considered fulfilling that mandate. The sentencing mandate is an overriding principle that limits the sentence a Court may impose.

### a.    The Section 3553(a) Sentencing Mandate: The "Parsimony Provision"

The basic mandate and overriding principle of Section 3553(a) requires a District Court to impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in Section 3553.

   a.  retribution ("to reflect seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense");

   b.  deterrence ("to afford adequate deterrence to criminal conduct");

    c.   incapacitation ("to protect the public from further crimes of the defendant"); and

    d.   rehabilitation ("to provide the defendant with needed educational or vocational training,

        medical care, or other correctional treatment in the most effective manner").

18 U.S.C. §3553(a)(2).

The sufficient-but-not-greater-than-necessary requirement has been described as the "parsimony provision." See, e.g. , *United States v. Brown*, F. Supp. 2d, 2005 WL 318701, at *6 (M.D. Pa. Feb. 10, 2005); see also *Bifulco v. United States*, 447 U.S. 381, 387 (1980) (explaining that statutory construction "rule of lenity" applies to sentencing statutes as well as to substantive criminal offense statutes). Critically, the parsimony is not just another "factor" to be considered along with the others set forth in Section 3553(a). Rather, it sets an independent upper limit on the sentence a Court may impose.

**b.**    **The Section 3553(a) Factors to be considered in complying with the sentencing Mandate**

In determining what sentence is sufficient but not greater than necessary to comply with the Section 3553(a)(2) purpose of sentencing, the Court must consider several factors listed in Section 3353(a). These are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the kinds of sentence available; (3) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range; (4) the need to avoid unwarranted sentencing disparity; and (5) the need to provide resolution where applicable. 18 U.S.C. §3553(a)(1), (a)(3)-(7). Neither the statute itself nor *Booker* suggests that any one of these factors is to be given greater weight that any other factor. However, what is clear that all of these factors are subservient to Section 3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing.

**Application of the Section 3553(a) Principles and Factors of this Case**

Mr. Obilo was convicted of Conspiracy to Commit Bank Fraud 18 USC § 1349. The probation officer prepared a Presentence Report ("PSR"). The officer set the Guidelines for conviction as to the offense as combined adjusted offense level 34. The Guideline Range from Sentencing Table when coupled with Mr. Obilo's criminal history category of I results in advisory guideline imprisonment range of 151-188 months.

### A.        The Nature and Circumstances of the Offense

One of the factors the Court is directed to consider under Section 3553 is the nature and circumstances of the offense. The nature and circumstances of the offense has been discussed in detail in this sentencing memorandum. Also, the nature and circumstances of Mr. Obilo's role in the alleged offense which is minimal or minor, and no prior contact with the Criminal Justice System, makes a sentence within the co-defendants sentence compliant to avoid disparity.

### B.        The Circumstances and History of the Defendant

Section 3553 also directs the Court to consider the circumstances and history of the Defendant when determining what sentence is appropriate.

While Mr. Obilo has maintained stable employment over a long period of time, good relationship with his family, however, he freely spoke with Law Enforcement without an attorney when stopped at JFK airport. This history of redeemable qualities should be considered when determining what sentence is reasonable under Section 3553. (See attached letters).

### C.        The Need to Avoid Unwarranted Sentencing Disparities

The need to avoid unwarranted sentencing disparities is another consideration under Section 3553. Imposition of a sentence inside the guideline range would in this instance increase sentence disparities among defendants with similar records found guilty of similar conduct, rather than avoid such disparity, as called for by USSG.

The Federal Sentencing Guideline Manual Ch. 1, Pt. A. § 2 states that 'If…a particular case presents a typical features, the Act allows the Court to depart from the guidelines and sentence outside the prescribed range."

The Court is required to consider relevant policy statements of the Sentencing Commission.  18 U.S.C. § 3553(a)(5). The Court is required to avoid unwarranted disparities in imposing a sentence. 18 U.S.C. § 3553(a)(6). It is also required to impose a sentence that will promote respect for the law. *Id*. § 3553(a)(2)(A).

That Abel Nnabue plead guilty to the same offense and was sentenced to 54 months; Precious Matthews plead guilty to the same offense and was sentenced to 51 months; Brandy Anderson plead guilty to the same offense and was given a two year probation, with 40 days in community confinement; Ezenwa Onyedebelu plead guilty to the same offense and was sentenced to 37 months; Daniel Orjinta plead guilty to the same offense and was sentenced to 42 months and Paula Gipson with many prior criminal convictions is to be sentenced 9/4/09.

Everything about the conduct of the aforestated co-defendants are more egregious than Mr. Obilo's conduct. First, they all received proceeds from the transaction as detailed by Western Union transfers while nothing went to Mr. Obilo according to Det. Park. Second, they were all involved in the scheme deeply with phone calls, laptops, spoof card accounts, emails and other transactions that shows losses higher than what they were held accountable. Third, unlike the others, Mr. Obilo was employed and was a student as well. The only difference that the Court could weigh in favor of the others is that they plead guilty pursuant to a plea agreement with the government. In contrast, Mr. Obilo chose to exercise his constitutional right to require the government to prove its case against him; the only offense that Mr. Obilo was charged with was the instant count of conviction i.e. Conspiracy to Commit Bank Fraud in the EDVA.

The defendant's restitution amount in light of the facts of this case, facts adduced at trial and the legal argument herein requests that his restitution ordered be calculated based on the same formula used in arriving at a restitution judgment for the other defendants in this case including but not limited to Brandy Anderson and Abel Nnabue.

    **D.**    **The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law and to Provide Just Punishment for the Offense, to Afford Adequate Deterrence, to Protect the Public from Future Crimes and to Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment**

Some of the very statutory factors which are the ultimate guide to sentencing decisions post-*Booker* clearly argue in favor of less prison time, not more. Nor can it promote respect for the law to give Mr. Obilo a prison sentence that can quite credibly be viewed as greater than the sentence he likely would have received if there were no guideline as to his actual role in this alleged offense. In light of the sentencing disparity outlined above, and the other factors outlined by section 3553 including the nature and circumstances of the offense/role and the character of Mr. Obilo, the circumstances of this case, Mr. Obilo requests that the Court sentence him within a guideline range that does not create disparity with the other alleged co-conspirators.

Such a sentence reflects the seriousness of Mr. Obilo's role and actions on the dates of these incidents, while at the same time accounting for the circumstances surrounding this offense and his individual circumstances. The sentence operates to promote respect for the law and to provide just punishment for the offense, to afford adequate deterrence to protect the public and to provide Mr. Obilo with needed educational or other correctional treatment and decrease the chances that he would return to Court.

Mr. Obilo has already been incarcerated since his conviction in this case on April 9, 2009. In terms of rehabilitation, Mr. Obilo who has been separated from family has learnt his

lesson from the Jury's verdict. There is already a strong deterrence value in the fact that Mr. Obilo has already served approximately five months of any sentence to be imposed.

Finally, the ends of justice will be served if Mr. Obilo is sentenced as other defendants.

### E.    Other Section 3553(a) factors

Additionally, if the Court agrees with the defense position with regard to the guideline calculation with BOL = 7 + loss of less than $200,000 but more than $400,000 = 12, and governments position for more than 10 victims = 2 + sophisticated means = 2, for a total adjusted offense level of 23 and with a criminal history category I, a sentence of 46-57 months. However, this is adjusted with defense position for mitigating role of either -2 or -4 which further reduces the 46-57 months to either 37-46 months or 30-37 months. The above suggested advisory guideline range based on defendant's objections is appropriate in light of the other factors specified in 18 U.S.C. § 3553(a). Under 18 U.S.C. 3553(a)(1), regarding the nature and circumstances of the offense and the history and personal characteristics of persons convicted of similar offense and even without this structure, Mr. Obilo is highly atypical in many respects. The history and characteristics of Mr. Obilo reveal a college graduate who has shown propensity to work having maintained steady employment since he was young. He has had virtual full time employment while in the community unlike some of the co-defendants in this case.

Next, the goals of sentencing pursuant to 18 U.S.C. 3553(1)(A) succinctly stated are: just punishment; general and personal deterrence; incapacitation through incarceration and rehabilitation. The scientific criteria for causation are temporality, concomitant co-variation and lack of spuriousness. Mr. Obilo's criminal involvement has been caused by asociation. Therefore, rehabilitation while confined and supervision upon release justifies lenient punishment and with causation considered, is the necessary and sufficient casual antecedent to ameliorating and eliminating criminal activity. As such a sentence within the defendant's

suggested guideline range would reflect the seriousness of the offense, provide just punishment

for the offense, and afford adequate deterrence to criminal conduct, as required by 18 U.S.C. §

3553(a)(2)(A) and (a)(2)(B). The sentence Mr. Obilo receives from the Court will no doubt have

a significant impression on him, and under the circumstances, a sentence within the defendant's

suggested range of 1) 30-37 months; 2) 37-46 months; or 3) 46-57 months would help to provide

just punishment for the offense and will not create disparity with other similar co-defendants.

> … the Sentencing Guidelines do not displace the traditional
> role of the district court in bringing compassion and common
> sense to the sentencing process.
> … In areas where the Sentencing Commission has not spoken
> … district discretion in devising sentences that provide
> individualized justice". *U.S. v. Williams*, 65 F.3d 301, 309-
> 310 (2d Cir. 1995).

Under the above-described circumstances, "individualized justice" for Mr. Obilo is a

sentence within defendant's suggested guideline range based on any objections herein.

## RESTITUTION

The defendant's restitution amount in light of the facts of this case, facts adduced at trial

and the legal argument herein requests that his restitution ordered be calculated based on the

same formula used in arriving at a restitution judgment for the other defendants in this case

including but not limited to Brandy Anderson and Abel Nnabue.

## FINE

The defense agrees with the finding that Mr. Obilo does not have adequate resources to

pay any fine or the cost of incarceration or supervision upon release.

**WHEREFORE,** for the above stated reasons and for such reasons that will be stated at

the sentencing hearing, the Defendant, Mr. Obilo, by and through counsel, respectfully requests

that this Court in order to avoid unwarranted disparity in sentencing, sentence Mr. Obilo within

the defendant's suggested guideline range, all in order to impose a sentence required by statute to

be "sufficient, but no greater than necessary" with credit for time served, and recommended treatment programs that will aid in his rehabilitation and will not cause a distrust of the law within the community in which Henry Obilo lives and hopes to rejoin.

Respectfully submitted,

Henry Obilo
Defendant by Counsel

THE IWEANOGES FIRM, P.C.

By: _____/s/_____
    John O. Iweanoge, II (VSB#: 47564)
    IWEANOGE LAW CENTER
    1026 Monroe Street, NE
    Washington, D.C. 20017
    Phone:  (202) 347-7026
    Fax:     (202) 347-7108
    Email:  joi@iweanogesfirm.com
    Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of September, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John Eisinger, AUSA                         Carla G. Coopwood, SUSPO
United States Attorneys' Office              United States Probation Office
for the Eastern District of Virginia       for the Eastern District of Virginia
2100 Jamieson Avenue                    10500 Battleview Parkway, Ste. 100
Alexandria, Virginia 22314                Manassas, Virginia 20109

Dated: 2nd day of September, 2009.           _____/s/_____
                                              Of Counsel to Defendant