```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF VIRGINIA
                      Alexandria Division

UNITED STATES OF AMERICA,        )
                                 )
                  Plaintiff,     )
                                 )
      v.                         )      CRIMINAL ACTION
                                 )
HENRY OBILO,                     )      1:09-cr-47
                                 )
                  Defendant.     )
_____    )
```

                      REPORTER'S TRANSCRIPT

                           JURY TRIAL

                            VOLUME 3

                    Thursday, April 9, 2009


                             ---


BEFORE:        THE HONORABLE T.S. ELLIS, III
               Presiding

APPEARANCES:   UNITED STATES ATTORNEY'S OFFICE
               BY:  JOHN EISINGER, AUSA
                    TYLER NEWBY, AUSA

                  For the Government

               JOHN IWEANOGE, ESQ.

                  For the Defendant


                             ---


               MICHAEL A. RODRIQUEZ, RPR/CM/RMR
                    Official Court Reporter
               USDC, Eastern District of Virginia
                      Alexandria Division



1                              <u>INDEX</u>

2

3    JURY VERDICT                                    5

4    FURTHER PROCEEDINGS                            11

5

         (Court recessed)

6

7                              ---

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

PROCEEDINGS

 

1        (Court called to order at 9:06 a.m. in USA v. Obilo.)

       (Jury not present.)

       THE COURT:  Bring the jury in.

       (Jury impaneled at 9:07 a.m.)

       THE COURT:  Good morning, ladies and gentlemen.

       Again I can see all of you are here.  We will take the roll for purposes of the record.

       (Roll call, all jurors present.)

       THE COURT:  Again, good morning, ladies and gentlemen.

       Let me confirm once again that none of you had any difficulty in adhering to the Court's instructions and to refrain from discussing the matter with anyone.

       (Jurors indicating.)

       THE COURT:  Good.

       All right.  You may proceed now with your deliberations.  As I told you yesterday, you may deliberate as long or as little as you like.  You may not deliberate unless all 12 of you are present in the room with the door closed.

       Mr. Wood, are all the exhibits, books and everything in there?

```
 1              THE MARSHAL:  Yes, your Honor.

 2              THE COURT:  You also may determine when you

 3     will take breaks.  When you do so, knock on the door and

 4     tell Mr. Wood.  When you are taking breaks, you may not, of

 5     course, deliberate.

 6                  You may follow Mr. Wood into the jury room.

 7                  (Jury excused to deliberate at 9:09 a.m.)

 8                  (Court recessed at 9:10 a.m.)

 9                  (Court called to order at 10:35 a.m.)

10              THE COURT:  This is United States against Henry

11     Obilo, 09-47.

12                  The record will reflect that counsel and

13     defendant are present and prepared to proceed.

14                  Mr. Iweanoge, I take it you had enough time to

15     complete your task.

16              ATTORNEY IWEANOGE:  Yes, Judge.  Believe it or

17     not, if I knew this -- I guess that's why I'm a lawyer -- I

18     got there, and then they said because he is coughing and

19     sniffling, that they could not do the procedure.  They will

20     have to move it to another day.

21                  I'm like, "Should have told me this on the

22     phone."

23              THE COURT:  But even so, it was important for

24     you to be there.

25              ATTORNEY IWEANOGE:  That's true, Judge.
```

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    Because I would have been sleeping on the coach.

2              THE COURT:  All right.  We will now proceed.

3                         JURY VERDICT

4              THE COURT:  I have a note from the jury that

5    says, "9 April 2009.  We have a verdict."  Signed, Victor

6    Gordeuk.

7              Now, the way in which a verdict is received in

8    this case -- no, no, no, no.

9              (Pause.)

10             THE COURT:  Thank you.

11             The way in which the verdict will be received

12   is that the deputy clerk will ask the foreperson for the

13   verdict form.

14             I will review it to insure that it is correct

15   as to form, and then I will have the foreperson -- I beg

16   your pardon -- the deputy clerk publish the verdict, with

17   the defendant standing, facing the jury.

18             Now, if there is a formal problem with the

19   verdict form -- in other words, if they fail to mark

20   anything or mark both or fail to sign -- I will have counsel

21   at the bench to resolve the formal problem.

22             Otherwise, this is a simple jury verdict form,

23   and I don't anticipate any problem.

24             I will then direct the deputy clerk to poll the

25   jurors to insure that it is the verdict of each juror, and

1    that the verdict is unanimous.

2            And then I will have some words of thanks for

3    the jury and release them, and so whatever else is required

4    on the basis of the verdict.

5            Mr. Wood, you may bring the jury in.

6            And I will make this note a part of the record.

7            (Jury impaneled at 10:35 a.m.)

8            THE COURT:  Ladies and gentlemen, I have a note

9    from your foreperson indicating that the jury has reached a

10   verdict.

11           The way in which the verdict is received and

12   published in this Court is the deputy clerk will first ask

13   the foreperson for the verdict.

14           I will review the form to insure that it's

15   correct in a formal way.

16           And if it is, then the deputy clerk will

17   publish the verdict by reading it.

18           And following that, you will each be polled to

19   insure that it's your individual verdict, and it's

20   unanimous.

21           Following that, I will have some words of

22   thanks for your service.

23           All right.  You may proceed.

24           THE CLERK:  Mr. Foreman, has the jury reached

25   its unanimous verdict?

```
 1                    THE FOREPERSON:  Yes, we have.

 2                    THE CLERK:  Would you please pass the verdict

 3        to the court security officer.

 4                    THE FOREPERSON:  (Complied.)

 5                    (Pause.)

 6                    THE COURT:  All right.  May publish the

 7        verdict.

 8                    THE CLERK:  (Reading:)

 9                        In Case Number 09 criminal 47, United States

10                    of America versus Henry Obilo, we, the jury, find

11                    the defendant, Henry Obilo, respect to Count 1,

12                    conspiracy to commit bank fraud, guilty.  So say

13                    we all this 9th day of April, 2009.

14        Signed by the foreperson.

15                    THE COURT:  All right, you may be seated.

16                    THE DEFENDANT:  (Complied.)

17                    THE COURT:  You may poll the jurors

18        individually.

19                    THE CLERK:  Juror Number 1, Selena Monroe, is

20        the verdict as read your verdict?

21                    THE JUROR:  Yes.

22                    THE CLERK:  Juror Number 2, Victor Gordeuk, is

23        the verdict as read your verdict?

24                    THE JUROR:  Yes.

25                    THE CLERK:  Juror Number 3, Olga Lorincz-Reck,
```

1    is the verdict as read your verdict?

2                    THE JUROR:  Yes.

3                    THE CLERK:  Juror Number 4, William Brakefield,

4    is the verdict as read your verdict?

5                    THE JUROR:  Yes.

6                    THE CLERK:  Juror Number 5, Kati Davie, is the

7    verdict as read your verdict?

8                    THE JUROR:  Yes, it is.

9                    THE CLERK:  Juror Number 6, Patricia Fox, is

10   the verdict as read your verdict?

11                   THE JUROR:  Yes, it is.

12                   THE CLERK:  Juror Number 7, Donerell Dudson, is

13   the verdict as read your verdict?

14                   THE JUROR:  Yes.

15                   THE CLERK:  Juror Number 8, Tram McCarthy, is

16   the verdict as read your verdict?

17                   THE JUROR:  Yes.

18                   THE CLERK:  Juror Number 9, Sung-Hee Miller, is

19   the verdict as read your verdict?

20                   THE JUROR:  Yes.

21                   THE CLERK:  Juror Number 10, Michelle Telleria

22   is the verdict as read your verdict?

23                   THE JUROR:  Yes.

24                   THE CLERK:  Juror Number 11, John Childs, is

25   the verdict as read your verdict?

1              THE JUROR:  Yes.

2              THE CLERK:  And Juror Number 12, Evelyn

3    Sobarra, is the verdict as read your verdict?

4              THE JUROR:  Yes.

5              THE COURT:  All right.

6              Ladies and gentlemen, I am now able to thank

7    you for your service as jurors.  It's apparent to the Court,

8    and it was apparent by the two days, that you were paying

9    careful and close attention to the evidence.  And it's also

10    apparent that you deliberated carefully and diligently and

11    conscientiously in order to reach a unanimous verdict.  And

12    for that the Court and, indeed, society, are grateful to

13    you.

14              Now, you are no longer under any constraints

15    about discussing this matter.  You may discuss with whomever

16    you wish.

17              Now, counsel, the lawyers in this case, may not

18    contact you.  They are forbidden by local rule from

19    contacting you.  They may not call you.  We do that to

20    insure that you are not bothered or pestered by lawyers.  I

21    know that when I tried cases as a lawyer, I was very eager

22    to talk to jurors to see how I affected or offended them.

23    But that's not permitted.

24              Now you, however, may speak to whomever you

25    please.

1           Let me add a word of caution in that regard.

2    I'm always troubled when I see on the media, television and

3    so forth, jurors discussing with media representatives in

4    public what went on in the course of deliberations.

5           That seems to me to do an injury to the

6    deliberative process.  If jurors knew in advance that

7    everything they said or did in the course of jury

8    deliberations was going to be grist for a media mill, I

9    think it would have a chilling effect on jurors.  They would

10    not feel free to give a full and complete expression of

11    their feelings in the course of deliberations.

12           So, I suggest to you -- and it is not an order;

13    it is merely a suggestion -- I suggest to you that you have

14    a duty of confidentiality to your fellow jurors to refrain

15    from discussing what when on in the course of deliberations,

16    at least with the media.

17           But you may take your books now and go home,

18    and you may discuss it with whomever you please in whatever

19    depth you wish.

20           However, I remind you of the caution that I

21    just gave you.

22           Now, this case will proceed, and I am pleased

23    to have any of you call or come to see me -- this, after

24    all, the courthouse, the courtroom, they don't belong to me

25    or the judges or the lawyers.  They belongs to all of us.

1   And this is, in a real sense, your courthouse.

2               So, I invite you to come back or to call if you

3   have comments or suggestions or questions of any kind.  But

4   wait for 60 or 90 days, because this matter will now proceed

5   to a sentencing phase, approximately 60 or 90 days.  And

6   once that's over, I invite you to come by and see me and to

7   sit down and chat if you wish.  I would be delighted to do

8   that and to entertain any questions or comments that might

9   have.

10              Thank you very much for your service.  You may

11  now take your books and follow Mr. Wood out.

12              And I will insure you are not called again.

13  You have done your service for this period.  Thank you.

14              (Jury excused at 10:41 a.m.)

15                   FURTHER PROCEEDINGS

16              THE COURT:  All right, you may be seated.

17              Mr. Obilo, come to the podium, please.

18              THE DEFENDANT:  (Complies.)

19              THE COURT:  Mr. Obilo, the jury has found you

20  guilty of the charge in the indictment, engaging in a

21  conspiracy to commit bank fraud, and the Court adjudges you,

22  accordingly, guilty of that offense.

23              The Court will now order the preparation of a

24  presentence investigation report.  Mr. Obilo, this is a very

25  important document, because it's the document on which the

1    Court will chiefly rely in imposing an appropriate sentence.

2    So you should pay careful attention to the preparation of

3    this document.

4              Indeed, you have a role to play in its

5    preparation.  You will be asked by a probation officer to

6    provide information so that the report can be prepared.

7    You'll be asked to provide information about your

8    background, your family, your education, your work

9    experience, your health and financial conditions, your

10   version of the offense conduct and, indeed, anything else

11   that may be material in any way to the Court's sentencing

12   decision.  And you may have your counsel with you when you

13   provide that information to the probation officer.

14             Now when the report is completed, you'll be

15   furnished with a copy.  You'll have an opportunity to review

16   it, to review it with your counsel, and then to call to the

17   Court's attention any objections or any corrections that you

18   have to the report.

19             The government will have the same opportunity,

20   that is, to call to the Court's attention corrections or

21   objections they might have to the report.

22             Now, if either you or the government disputes

23   an objection or correction offered by the other, then the

24   Court will hold a hearing and you'll be permitted to offer

25   evidence, to cross-examine any evidence offered by the

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    government, and then the Court will resolve that dispute by

2    issuing findings before imposing sentence.

3           Now, at the time of sentencing, Mr. Obilo, the

4    Court will allow you to allocute.  That is, you will have

5    the right to address the Court and to say anything at all

6    you wish to the Court by way of extenuation, mitigation or,

7    indeed, anything you think the Court should know before

8    sentence is imposed.

9           You won't be required to address the Court, but

10   you'll have the opportunity to address the Court, as will

11   your counsel also have the opportunity to address the Court

12   on your behalf.

13           Just a moment.  I'll set the sentencing date.

14           (Pause.)

15           THE COURT:  The earliest date I have is

16   July 17th, 2009, at 9:00 a.m.

17           Is that date available?

18           ATTORNEY IWEANOGE:  The Court's indulgence.

19           THE COURT:  If it's not, I can perhaps move it

20   into the last week of -- no, let me do this.  Let me see the

21   schedule.  Maybe we can -- that's too far in advance.

22           ATTORNEY IWEANOGE:  I do have -- oh.  I do have

23   a sentencing before your Honor on the 10th of July for

24   Melquis Portillo.

25           THE COURT:  Yes.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1        (Pause.)

2        ATTORNEY IWEANOGE:  For the record, if the

3    Court wants to go with the 17th, I am also available on the

4    17th, as well.

5        THE COURT:  Well, I'm thinking that a better

6    date would be -- the 29th of May would be a better date.

7        ATTORNEY IWEANOGE:  Judge, I am going to be in

8    this courthouse.  However, I am going to -- I am starting a

9    four-week trial with Judge O'Grady starting on 26th of May.

10        THE COURT:  All right.  Let me move that, then.

11   Just a moment.

12        ATTORNEY IWEANOGE:  Except, if your Honor wants

13   to do it on later on the 29th, because I will be in the

14   courthouse.  I believe that Judge O'Grady recesses at 5:00,

15   and if your Honor wants to do it late on the 29th, I will

16   still be here.

17        THE COURT:  What about the 5th of June at

18   2:00 o'clock?

19        ATTORNEY IWEANOGE:  Judge, I am going to be in

20   the courthouse, and I'm going to be in trial.  That's for

21   four weeks.  So --

22        THE COURT:  Is that trial going to go on

23   Fridays?  Do you know?

24        ATTORNEY IWEANOGE:  I know that the last trial

25   I had with Judge O'Grady, I think he went on Friday.  But I

1    don't know if he is going to go on Friday.

2                THE COURT:  All right.

3                ATTORNEY IWEANOGE:  But I can do it on a

4    Friday, Judge, as long as if it's 2:00 o'clock -- if we are

5    sitting on the Friday, then we can do it later on in the

6    afternoon.

7                THE COURT:  Well, I will go with July 17th,

8    then.  July 17th at 9:00 a.m.

9                You said were available on that date?

10               ATTORNEY IWEANOGE:  On that, yes, Judge.

11               THE COURT:  All right.  July 17th at 9:00 a.m.

12               All right.  You may be seated, Mr. Obilo.

13               THE DEFENDANT:  (Complied.)

14               THE COURT:  Now, what's the government's

15   position with respect to whether he should be remanded or

16   whether he should proceed -- be released on the same

17   conditions?

18               Yes, Mr. --

19               ATTORNEY IWEANOGE:  Judge, before we address

20   that, Judge, there are two procedural issues.  The first one

21   is the forfeiture issue.

22               THE COURT:  Oh, yes.

23               ATTORNEY IWEANOGE:  The Court -- I have

24   reviewed the forfeiture -- of course, I reviewed the

25   forfeiture section of the document, and I will be submitting

1    on the record.

2              The reason, Judge, is, going through everything

3    in the forfeiture, there is nothing there that belongs to my

4    client.  So we really have no stake in it, for practical

5    purposes.  So we will let that be decided by your Honor.  In

6    other words, we don't contest forfeiture.

7              THE COURT:  All right.  So he will waive jury

8    and proceed -- you will file a pleading on that.

9              ATTORNEY IWEANOGE:  Yes, Judge.

10             And then --

11             THE COURT:  He may still -- it will still be

12   necessary to have a hearing on it, because the government

13   has to prove to the Court that these are assets that the

14   conspiracy should forfeit.

15             Is that right, Mr. -- that's right, isn't it,

16   Mr. --

17             ATTORNEY EISINGER:  That's correct, your Honor.

18             THE COURT:  -- Eisinger?  All right.

19             So I will have to set a hearing on that.

20             All right, that's the first thing, namely that

21   the defendant waives a jury on that, and we will proceed to

22   have that tried to the Court.  I will set a date for that.

23             Next.

24             ATTORNEY IWEANOGE:  Judge, the next thing is,

25   pursuant to Rule 29 and Rule 33, I'm making a motion for

1    judgment of acquittal and for a new trial, and I submit on

2    the record.

3                    THE COURT:  All right.

4                    For the same reasons, I will deny that motion.

5    There was ample evidence from which the jury could find his

6    involvement in the conspiracy beyond a reasonable doubt.

7                    Indeed, if the conspiracy -- I beg your

8    pardon -- if the jury were to believe either of the

9    conspirators, or both of them, and all of the rest of the

10   evidence as merely corroborative -- because both of those --

11   two of those testified that he was a member of the

12   conspiracy, that they observed him engaged in activities

13   relating to the conspiracy, to advance the goal of the

14   conspiracy.

15                   I think that's right, two of the three did.

16                   Is that right, Mr. Eisinger?

17                   ATTORNEY EISINGER:  I believe that all three

18   said that he was involved.  Two of them saw him making phone

19   calls.  And one only saw him with the credit reports, your

20   Honor.

21                   THE COURT:  And that's Gipson.

22                   ATTORNEY EISINGER:  That's correct, your Honor.

23                   THE COURT:  All right.

24                   So there is ample evidence from which the jury

25   can find its verdict, and I will deny the motion.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    Now, we need a date, now, for any hearing on

2    forfeiture, and then we will come back to whether the

3    defendant should be released on conditions pending

4    sentencing.

5    ATTORNEY EISINGER:  Can that be done the same

6    date as sentencing, your Honor?

7    THE COURT:  It can be done the same day as

8    sentencing.

9    All right.  We will do it the same day as

10   sentencing.

11   ATTORNEY EISINGER:  Thank you, your Honor.

12   THE COURT:  Now, Mr. Eisinger, what's the

13   government's position on with respect to whether this

14   defendant should be remanded today or released on conditions

15   pending appeal?

16   I take it that this is not an offense under

17   3142(a)(2) that requires remand, absent exceptional reasons.

18   ATTORNEY EISINGER:  That's correct, your Honor.

19   THE COURT:  This is a case in which the Court

20   has to decide whether he is a risk of flight or danger to

21   the community if he is allowed to remain free on conditions

22   pending the sentencing.

23   Is that right?

24   ATTORNEY EISINGER:  That's correct, your Honor.

25   THE COURT:  All right.  What's the government's

1    position?

2               ATTORNEY EISINGER:   The government believes

3    that he should be remanded at this time, your Honor.

4               First, he is facing a very long sentence.   Our

5    quick calculation of the guidelines range is that it's

6    probably at least 10 years, and obviously the maximum is up

7    to 30.

8               The defendant has traveled to Nigeria twice in

9    the last 15 months or so, for a total of about three months.

10   He only became a US citizen in August of last year, actually

11   after the arrest warrant was issued.   So he certainly has a

12   home in Nigeria if he wanted to go back there.

13               He never -- he never forfeited a Nigerian

14   passport.   I believe he claimed that he didn't know where it

15   was or that he lost it or that it was expired.   We have no

16   way of verifying that.

17               The information I have gotten from agents is

18   that when people who have ability to be both in the US and

19   Nigeria travel to Nigeria, they normally travel on a

20   Nigerian passport.   So it's likely that he had one within

21   the last year and a half, and now he has no idea where it

22   is.

23               Finally, we have the testimony of Ezenwa

24   Onyedebelu at trial, which contradicted the defendant's own

25   statements as to the call that occurred between --

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1     THE COURT:  I thought it was fairly consistent.

2  Didn't --

3     ATTORNEY EISINGER:  Well, the defendant --

4     THE COURT:  -- Onyedebelu testify that

5  Mr. Obilo asked him whether he was going to testify against

6  him?

7     And I think Mr. Onyedebelu said "no," or words

8  to that effect.

9     Isn't that what Mr. Obilo told the Court?

10     ATTORNEY EISINGER:  My recollection, anyway,

11  was that Mr. Obilo told the Court that he received a call

12  from Mr. Chikezie Onwumere late at night and didn't know who

13  was on the phone, answered the phone, and said, "I can't

14  talk to you."

15     However, Ezenwa Onyedebelu said that he spoke

16  to him for a couple of minutes, and that it was Mr. Obilo

17  who stated that he wanted to talk to Ezenwa about whether he

18  would be testifying or not.

19     And really, it seems like that makes more

20  sense --

21     THE COURT:  So your recollection of the

22  testimony is -- or -- I'm not sure that Mr. Obilo testified.

23  I think what he did, he proffered through counsel, although

24  he said it -- Mr. Iweanoge can refresh my recollection.

25     But your recollection is that Mr. Obilo did not

1   say or did not admit at that time that he asked him if he

2   was going to testify against him?

3         ATTORNEY EISINGER:  That's correct, your Honor.

4   And the defendant did testify.  He took the stand and took

5   the oath and testified that he said, "I can't talk to you

6   because I was told not to talk to you."

7         And he also stated at that time that --

8         THE COURT:  I do recall -- I do recall telling

9   you in that hearing, at the conclusion of that hearing, that

10   I wanted to be reminded of that at this time, should it be

11   pertinent to do so.

12         Let me ask Mr. Rodriquez.

13         How accessible is that material from the

14   hearing?

15         THE REPORTER:  Very accessible.

16         (Laughter.)

17         THE COURT:  Well, I will want to look at it in

18   a minute or two.  So we will recess and give you that

19   opportunity.

20         ATTORNEY IWEANOGE:  I will -- as an officer of

21   the Court, I was going to spare you the process -- I have to

22   be truthful to you -- and state it as it is.

23         THE COURT:  All right.  Well, I will hear that,

24   too.  But I may want to look at it.

25         All right, anything else on this point?

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    I will hear from Mr. Iweanoge now.

2    ATTORNEY EISINGER:  I would just state that

3    based on my recollection of what was said at the prior

4    hearing, that Mr. Obilo stated he barely knew Ezenwa.

5    It makes no sense for someone who is going to

6    go to prison in two weeks to suddenly call someone he barely

7    knows, out of the blue, who he knows he is not supposed to

8    talk to --

9    THE COURT:  Well, Chikezie is the one who made

10   the call.  That, I think, there is --

11   ATTORNEY EISINGER:  Correct.

12   THE COURT:  -- unanimity on that.

13   ATTORNEY EISINGER:  But the implication was

14   that Ezenwa wanted to talk to Mr. Obilo; that he wasn't

15   simply handing him a phone for no reason, that no one know

16   why Chikezie was handing him the phone.

17   I will leave that to your discretion, your

18   Honor.

19   THE COURT:  All right.

20   Do you have anything else, from Mr. Newby?

21   ATTORNEY EISINGER:  No, your Honor.

22   THE COURT:  All right.

23   Mr. Iweanoge?

24   ATTORNEY IWEANOGE:  Yes, judge.

25   Judge, I will ask the Court to continue my

1    client on his present conditions of bond, which he has

2    abided by.

3            When I got back to my office yesterday, I

4    received an update that came to the Court from the Pretrial

5    Services officer.  The name --

6            THE COURT:  Yes, I have that here.  I read it.

7            ATTORNEY IWEANOGE:  Yes.

8            When I saw that yesterday, I said that I will

9    have to remind -- bring to the attention of the Court today

10   that my client went to get the license, and they told him

11   what is represented in that letter.

12           But then -- and then subsequent --

13           THE COURT:  He now has a New York license.

14           ATTORNEY IWEANOGE:  Yes, Judge.

15           I told him that he should go back there.  If

16   they have any problem, they should call me or call pretrial.

17   You cannot submit a passport that is in custody of the

18   Court.

19           And he went back there and they issued him a

20   license.

21           THE COURT:  Yes.  Well, I think I dealt with

22   that issue.

23           ATTORNEY IWEANOGE:  Yes, Judge.

24           THE COURT:  I didn't remand him that day

25   because I authority that was a technical violation, and it

1    was easy for me to understand that he didn't know that, and

2    he needed to get a New York license; which he did.

3              ATTORNEY IWEANOGE:  Yes, Judge.

4              THE COURT:  And so I didn't remand him.

5              ATTORNEY IWEANOGE:  Yes.

6              THE COURT:  And I didn't remand him on that day

7    because the only evidence I had before me was that

8    Onyedebelu had called him or Chikezie had, and given the

9    phone to Onyedebelu, and that your client had told him, "I

10   can't talk to you."  And that was the end of the matter.

11             So on that evidence, I said he should remain on

12   conditions, which he did.

13             And as I understand it from the report, he has

14   been otherwise completely compliant, other than the ticket

15   that he received, and that violation.

16             Let me ask the Pretrial Services officer, if

17   that person is present in the courtroom.

18             She is not.

19             All right.  I am persuaded that he has been

20   otherwise compliant.

21             ATTORNEY IWEANOGE:  Yes, Judge.

22             And in terms of the risk of flight argument,

23   Judge, I believe Mr. Eisinger, sitting in the same place

24   three or four years ago, was making the same argument with

25   respect to Mr. Akinfe.  The end result, of course, did not

1    turn out exactly right.

2              But then the problem with making an argument

3    that somebody is a risk of flight, Judge, is, no pun

4    intended, but --

5              THE COURT:  Was Akinfe the one who I had agents

6    follow, and he --

7              ATTORNEY IWEANOGE:  Yes, Judge.

8              THE COURT:  -- did, indeed, try to flee?

9              ATTORNEY IWEANOGE:  He was headed to Baltimore,

10   Judge.

11             THE COURT:  Headed to Baltimore.  I do remember

12   that.

13             ATTORNEY IWEANOGE:  Yes.

14             (Laughter.)

15             ATTORNEY IWEANOGE:  And your Honor, even though

16   he was facing more time, the government will always say,

17   yes, this person is facing this time and this time, but at

18   the end of --

19             THE COURT:  Well, so that this record is clear,

20   we are discussing a case that happened some years ago, two

21   or some more years ago, in which I released a defendant on

22   conditions following a conviction.  But at the time I

23   released him, I had some misgivings, so I had -- I directed

24   the probation officer to stake out his house.

25             They did.  He left his house, on his way to the

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    airport, at which time I ordered his arrest, because he did

2    not have permission to go to the Baltimore Airport, from

3    whence he could go elsewhere.

4            ATTORNEY IWEANOGE:  Judge, if my recollection

5    is correct -- but your Honor's recollection controls -- he

6    was on I-95, actually going to his office, because --

7            THE COURT:  That's what says.

8            ATTORNEY IWEANOGE:  Yes, Judge.  Yes.

9            THE COURT:  It happened to be, also, the way to

10   the airport.

11           ATTORNEY IWEANOGE:  That's unfortunately true,

12   Judge.  And just like being on 66, one can argue that is

13   straight to Dulles Airport, but then it could be leading to

14   Stafford, as well.

15           But suffice it to say that the problem with

16   making an argument that somebody who has an ancestral home

17   before becoming a United States citizen, or was born in the

18   United States but has an ancestral home, like our present

19   President, that he is susceptible to flee the United States

20   and head off to Kenya, or, in the case of Mr. Obilo, that

21   because he has traveled to Nigeria, that he is now going to

22   rush back and go to Nigeria.

23           But then the surprising thing about this case,

24   Judge, is that since this case has been pending, he has been

25   residing in New York.  And at the time that -- during the

1    pendency of this case, he knew what he was facing, and he

2    could have easily headed to JFK and taken off, or probably

3    driven off to Canada and taken off to Nigeria.

4              But he stayed the course, hired two lawyers in

5    the process, and then went to trial on his case.

6              So if this is somebody who is posing a risk of

7    flight, he wouldn't really wait around in this case to find

8    out what's going to happen.  He should have taken off a long

9    time ago.

10             You don't wait to be convicted to take off.

11   You take off, and hopefully stay away until the Statute of

12   Limitation runs out, and then you show up.

13             But suffice it to say, Judge, that the argument

14   about the risk of flight, the problem with that, Judge, is

15   that for him to get to Nigeria, you have three flights that

16   you can get on:  British Airways, KLM, or Lufthansa.  The

17   first port of call is either to London or Amsterdam or

18   Stuttgart, if I am correct on Lufthansa.  I think it's

19   Stuttgart -- one of the German -- yes.

20             Before you board the airplane, Judge, since

21   911, you don't just show up at the airport with a Nigerian

22   are passport and board.

23             First of all, having a Nigerian passport

24   doesn't entitle you to board the plane.  There has to be an

25   I-94 accompanying it; otherwise, the airport is going to

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    call the -- I think they are now called ICE, or BCIS, or one

2    of them, because the Nigerian passport is supposed to have

3    an I-94 that authorizes you to stay.

4              So the Nigerian passport basically means that

5    you are just here, and then you are here illegally.

6              So he doesn't have a Nigerian passport that has

7    an I-94, if you are talking about dual citizenship.

8              And then, to correct the record, he has been a

9    United States citizen since 2005.  I don't know how the

10   government record indicates it was last year.  But Pretrial

11   can go check it with the Department of State.  He has been a

12   citizen since 2005, not last year.

13             But suffice it to say, Judge, that for him to

14   travel, he has to present not just a Nigerian passport at

15   Dulles or BWI to board an airplane.  And then, boarding an

16   airplane, it doesn't get the direct flight to Nigeria.  You

17   still have to stop at a European country that is an ally of

18   the United States, before you can even make it to Nigeria.

19             So, there is -- let's assume for some reason

20   that your brother seems to be the one minding the airport at

21   National -- I mean at Dulles or BWI and you are able to

22   leave the United States.  You will not have to same luck

23   when you land in any of the European countries that I just

24   mentioned.

25             Suffice it to say that the new airline that

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1  started flying directly from Atlanta, George, is now Delta,

2  which is an American airline.  For you to board, you must

3  present the proper documentation, which I have also alluded

4  to, judge.

5          But then if my understanding is correct, he has

6  a GPS monitoring on his leg.

7          Am I right?

8          He has a GPS monitoring system on his leg,

9  unlike Akinfe, Judge, who had no monitoring system, and you

10 had to extend the resources to track him.

11         With this man, Judge, I have to call Mr. Alaria

12 (phonetics), even when he has to drive down here to meet

13 with me in preparation for his trial.

14         And even after faxing letters to them, they

15 will still call to confirm what time period that I need him.

16         So, Judge, I do not believe that this man is a

17 risk of flight.

18         Suffice it to say, Judge, that the government

19 argues or states that he is facing ten years.  We have the

20 sentencing already set before your Honor on July 17th.

21 We'll deal with -- your Honor has to be the person that

22 makes the decision as to how much time he gets.  But I have

23 to bring to the Court's attention that the person so far

24 that has got the most time in this case is somebody with a

25 prior criminal case, Mr. Abel Nnabue, who got 54 months.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    And we have Ezenwa Onyedebelu, who got 37 months; Paula

2    Gipson, with a prior record, has not been sentenced, but I

3    would assume she is going to fall within the same range of

4    Mr. Abel Nnabue.  And I believe one person is on probation,

5    if I am not mistaken, I think the one who was receiving

6    money.

7             Suffice it to say that, Judge, based on the

8    evidence that your Honor heard in this case, and based on

9    the circumstances of this case, Judge, looking at the plea

10   agreement of the others, and the loss amount that the

11   government put in there, I do not see where the ten years

12   come from.

13            But then even assuming he is facing that much

14   time, Judge, Mr. Eisinger faxed me -- or e-mail me a

15   detailed recitation of the facts and circumstances of this

16   case when I took it over, and the exposure of the defendant.

17            And he was willing to go to trial on this case,

18   Judge, knowing that he had an opportunity to plead on that,

19   but he did not.

20            Suffice it to say, Judge, that in terms of

21   danger to the community, the Pretrial Services report has

22   been good.  He has not reoffended or done anything that he

23   shouldn't do.

24            He resides with the mom in New York.  We have

25   electronic monitoring in place, so we know where he is at

1    any point in time.  So this isn't a case where he is going

2    to show up at the airport.

3              And Judge, you cannot go past TPA with an

4    electronic monitoring system.  I had a client with a case up

5    on appeal, and I believe Judge Mott give him permission to

6    be able to travel to some location, like Michigan, and the

7    other places where he has businesses during the pendency of

8    the case.

9              But then the problem was that he couldn't board

10   an airplane because he has an electronic device, an

11   electronic monitoring system on his leg, and when he goes

12   through the metal detection, it beeps.  So he has to drive

13   to all these places, including Michigan and Mississippi,

14   because of his electronic device.

15             So I do not see how somebody wearing an

16   electronic device would be able to go through TSA.

17             I can see the government standing up again and

18   say, Mr. Iweanoge, he can cut it off.

19             But then if you cut it off, then Mr. Alaria is

20   going to know, and an APB put out at the airport.

21             You don't get out of this country without going

22   to the airport.  And I don't see how he can make it to

23   Nigeria.

24             So based on those reasons, Judge -- he has no

25   prior record.  If you look at his role, or the role in this

1    case, Judge, it is minimal, at best.  And even the three

2    calls that the government says are alluded (sic) to him, no

3    money was lost in that process.

4              You take the testimony of Agent Pak, no money

5    is traceable to him.

6              You take the testimony of Nnabue, Abel, Q, who

7    said he maybe called a couple of times.  Maybe sometimes --

8    first time I asked him, maybe December or January.

9              Then when I reminded him, "Isn't it true that

10   he was in Nigeria in December and January," he said, "Yeah,

11   yeah, yeah, you're right.  He traveled.  That's why I'm kind

12   of saying December or January."

13             And then the time period that this alleged

14   conspiracy supposed to do have done anything in the Eastern

15   District of Virginia is the time that this young man wasn't

16   even in the country.

17             So suffice it to say, Judge, that I do not see

18   how the government will be able to extrapolate and put on a

19   case where this man is facing ten years in jail.  I can't --

20   it's not foreseeable to -- at least to this counsel standing

21   up here.

22             So, I do not believe, Judge, that he is facing

23   a long time.  He is only 29 years, Judge.  Even if he ends

24   up with five years, he still has a whole lot of life left

25   ahead of him.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1            And, you know, this is -- we all make mistakes.

2            The people that appeared before you, some of

3    them have made mistakes, and they have -- some, Gipson and

4    Abel, decided to go back to it.

5            We can take Onyedebelu at his word, this being

6    his first contact with the system.

7            But, Judge, this Ezenwa Onyedebelu is

8    originally from Nigeria, but we have him walking out on the

9    street.  In other words, just because he decided to

10   cooperate with the government, we can trust him to be out on

11   the street and self-surrender, even though he has the same

12   Nigerian passport and has the same American passport and --

13           THE COURT:  He doesn't have any passports any

14   more.

15           ATTORNEY IWEANOGE:  Oh, yes, Judge.

16           And my client doesn't have any passports,

17   either, Judge.

18           So, in other words, we can trust Onyedebelu to

19   stay there, even though his parents are so rich that they

20   could take him out of the country if they wanted to.

21           I'm not implying that they are.

22           But suffice it to say, Judge, that if we can

23   trust Onyedebelu, we can trust this young man, because it's

24   the same facts and circumstances.

25           Going to the testimony and the issue dealing

1   with this supposed phone call, Judge, I had forgotten the

2   person that said this, Judge.  I heard this on Meet the

3   Press not too long ago.  But it goes like this:  There is

4   always a road, and on the two sides of the road are

5   sidewalks.

6            In other words, you are either going to be in

7   the middle of the road or you are going to be on the

8   sidewalk.

9            Alluding to the present facts and circumstances

10  of this case, we have the testimony of my client as to this

11  telephone conversation on one side of the sidewalk.  We have

12  the testimony of Onyedebelu on the other side of the

13  sidewalk.

14           And as our mothers have told us a long time

15  ago, Judge, the truth lies in the middle.

16           You are the fact-finder.

17           But then I believe, Judge, that the only true

18  person who can tell us what actually transpired during this

19  conversation is Mr. Chikezie Onwumere, who the person that

20  even made the phone call and put anybody through.

21           We have th e testimony of my client, that I

22  think run the conversation -- (inaudible).

23           We have the testimony of Onyedebelu, who said

24  that this kind of conversation took place.

25           The government says to your Honor, you should

1    credit the testimony of Mr. Onyedebelu.  Of course, this is

2    the first -- we don't have an opportunity to ask the jurors,

3    "Do you think that Mr. Onyedebelu was telling the truth?"

4             This is the same Onyedebelu that said, "Yes, I

5    paid money into Mr. Obilo's account, Washington Mutual."

6             And we have the lead agent, Detective Pak,

7    saying that, "There was no money I found going to

8    Mr. Obilo."

9             So the government is saying, "Oh, just because

10   Mr. Obilo is convicted, now whatever Onyedebelu says is

11   absolutely 100 percent true, as opposed to my client.

12             In other words, Judge, that really --

13             THE COURT:  They are both convicted.

14             ATTORNEY IWEANOGE:  Yes, Judge.

15             So, Judge, I do believe that if there is an

16   appropriate case where an individual should continue -- this

17   is not a presumption case -- if there is a case where an

18   individual should be continued on his present conditions,

19   where he has obeyed everything, including going back after

20   he was rejected on the New York license, to go and insist,

21   as I told him -- and I was waiting on the phone -- to talk

22   to the supervisors at DMV in New York, that the passport

23   could not be returned because the Court has it, and they

24   have agreed, and they gave him a New York license -- the mom

25   lives in New York, the family lives there, Judge.

1        People also make this thing about, yeah, he

2   could flee and go to Nigeria.

3        But if it was such a great country, Judge, for

4   him to flee and go back to Nigeria, you start to wonder why

5   his whole family ended up here in the United States.

6        So many people --

7        THE COURT:  I don't have any doubt --

8        ATTORNEY IWEANOGE:  Yes, Judge.

9        THE COURT:  -- about the reasons.  My family

10  were immigrants.  Your family is immigrants.  But there is a

11  difference between being an immigrant here and being an

12  immigrant in jail.

13        ATTORNEY IWEANOGE:  That's right, Judge.

14        THE COURT:  Would you prefer to be an immigrant

15  in jail or a free person in Nigeria?

16        ATTORNEY IWEANOGE:  Judge, if you remember the

17  other case I had before you, Alaran, a young man --

18        THE COURT:  I don't remember it.

19        ATTORNEY IWEANOGE:  Mr. Alaran, Judge, was

20  offered a plea, if you recall, for him to get time served,

21  which was three or four days in jail and head on back to

22  Nigeria, and he rejected the plea and said he was going to

23  trial.  And he stayed in Alexandria Jail for six months.

24  And we went to trial.  Mr. Alaran was convicted.  And then

25  we noted an appeal.  And he continued, Judge, to sit in jail

1    instead of going back to Nigeria.

2              THE COURT:  All right.  I take it there are

3    some people who would prefer to be in this country in jail,

4    rather than overseas.  I agree with that.  I have had

5    experiences like that.

6              ATTORNEY IWEANOGE:  Yes.

7              THE COURT:  Anything else?

8              ATTORNEY IWEANOGE:  No, Judge.

9              THE COURT:  All right.

10             Mr. Eisinger, do you have any response, very

11   briefly?

12             ATTORNEY EISINGER:  I just -- a couple of

13   things, your Honor.

14             The first is that this entire scheme is built

15   around hiding one's identity.  And Mr. Obilo has now been

16   convicted of using other people identities that he got

17   fraudulently.  He was living, at the time he was arrested,

18   in an apartment in someone else's name.

19             So he could easily get out of this country.

20   It's not that hard to walk across a land border to Canada or

21   Mexico.  You don't have to use an airport to get out of the

22   United States.  It's harder to get in than to get out of the

23   borders.

24             In addition --

25             THE COURT:  That's as it should be.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1          ATTORNEY EISINGER:  Correct.

2          The point about Ezenwa versus Mr. Obilo is not

3   necessarily who is generally a more believable person based

4   on their background, who has been convicted of more crimes

5   or whatever, but whose story makes more sense.

6          That someone who Mr. Obilo says he didn't even

7   know more than fleetingly would suddenly call him up for no

8   real apparent reason and want to talk to him, or whether the

9   defendant --

10          THE COURT:  Well, I didn't ask you an

11   irrelevant question, but the maker of the call was Chikezie.

12          ATTORNEY EISINGER:  Correct, your honor.

13          THE COURT:  Where is he?

14          ATTORNEY EISINGER:  He is in New York

15   currently, your Honor.

16          THE COURT:  Does the government intend to

17   prosecute him?

18          ATTORNEY EISINGER:  We are not sure if we want

19   to or not, your Honor.

20          THE COURT:  All right.  And you haven't --

21          ATTORNEY EISINGER:  There is also --

22          THE COURT:  -- found Onwumere.

23          ATTORNEY EISINGER:  -- a separate case in New

24   York, your Honor.

25          THE COURT:  I beg your pardon?

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1          ATTORNEY EISINGER:  There is also a separate

2     case going on in New York, your Honor.

3          THE COURT:  I see.  On another matter.

4          ATTORNEY EISINGER:  They are related -- it's a

5     related scheme with related people.

6          THE COURT:  And I take it you haven't found

7     Onwumere yet.

8          ATTORNEY EISINGER:  That's correct, your Honor.

9          THE COURT:  But basically, the point you are

10    making is that I should believe Onyedebelu about that phone

11    call rather than Mr. Obilo.

12         ATTORNEY EISINGER:  Well, I believe, your

13    Honor, that his story makes more sense.  It's more credible

14    in terms of what he is saying, that somebody who is about to

15    go to trial and who states on the phone to him, "Without

16    your testimony they have no case," has a reason to call

17    Mr. Onyedebelu and see if he is going to testify.

18         Because if he is not, then he can to trial --

19         THE COURT:  Except Mr. Obilo didn't make the

20    call.

21         ATTORNEY EISINGER:  Correct.  But he had at

22    least --

23         THE COURT:  You are suggesting that the call by

24    Chikezie was prompted by Obilo.

25         ATTORNEY EISINGER:  That's correct, your Honor.

```
 1              THE COURT:  Well, I'm going to ask Mr.
 2   Rodriquez to find it, because I do want to hear what
 3   Mr. Obilo said about it without having to rely on anyone's
 4   memory.
 5              And I take it you would also point out the
 6   provision, 3143(a).
 7              Anything else?
 8              ATTORNEY EISINGER:  No, your Honor.
 9              THE COURT:  All right.  I will take a brief
10   recess to give Mr. Rodriquez an opportunity to find that --
11   to find that excerpt from the hearing.
12              It's just the excerpt in which he testified,
13   Mr. Obilo testified.
14              And I'll -- once you find that, I'll have you
15   read it in open court, and then I will resolve the matter.
16              Court stands in recess.
17              (Court recessed at 11:17 a.m.)
18              (Court called to order at 11:34 a.m.)
19              THE COURT:  Mr. Rodriquez, have you found his
20   testimony?
21              THE REPORTER:  Yes, sir.
22              THE COURT:  Is it difficult to print out a
23   transcript, or is it easier to read?
24              THE REPORTER:  I can read it.
25              THE COURT:  How long is it?
```

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1          THE REPORTER:  It's just a paragraph.

2          THE COURT:  All right.  Go ahead.

3          (The reporter read the record as requested.)

4          THE COURT:  Thank you.

5          Let me ask some further questions here.

6          Mr. Eisinger, how did you get the ten years?

7          ATTORNEY EISINGER:  It's based on the loss

8    figure of approximately $2-1/2 million.

9          THE COURT:  So the loss figure is greater than

10   that that was known at the time of the sentencing of the

11   others.

12         ATTORNEY EISINGER:  The loss figure that this

13   specific defendant was responsible for -- if we only hold

14   him responsible for the losses that he was attributed to,

15   not the entire scheme.  If it's the entire scheme, it goes

16   much higher.

17         In addition, we expect to have a level

18   enhancement for having a leadership role, that he had at

19   least two people working under him as part of this scheme.

20         THE COURT:  And you will have evidence to

21   support that.

22         ATTORNEY EISINGER:  Yes, your Honor.

23         THE COURT:  Now, tell me once again, what was

24   the amount that you think will be attributable to him?

25         ATTORNEY EISINGER:  More than $2-1/2 million,

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1     your Honor.

2                THE COURT:  And what's the total amount?

3                ATTORNEY EISINGER:  The total loss was over

4     $8 million.  The total attempts were over $29 million.  And

5     the total number of victims would go from at least 10 that

6     we know of now, probably up over 250, if we are including

7     everyone involved in this scheme.

8                THE COURT:  This indicates again why the first

9     of the defendants in the conspiracy on the bus, the better,

10    because they not only have the opportunity to cooperate, but

11    they also usually -- the amount of the loss is usually

12    smaller, because the government hasn't learned as much as it

13    ultimately does learn.

14                ATTORNEY EISINGER:  That's correct, your Honor.

15                In addition --

16                THE COURT:  I guard --

17                ATTORNEY EISINGER:  -- they all got --

18                THE COURT:  -- against that on unwarranted

19    disparities, though.  The question is, it may not be an

20    unwarranted disparity.

21                Go ahead.

22                ATTORNEY EISINGER:  In addition, they all got

23    acceptance of responsibility of three points, which the

24    defendant will not get.

25                THE COURT:  And what did you tell me about his

1  Nigerian passport?

2          ATTORNEY EISINGER:  I believe we were told

3  at -- I believe this was in front of Judge Davis at his --

4  when he first got bond, he claimed that he didn't have a

5  passport or he had lost it or he didn't know where it was.

6          No Nigerian passport has been turned in.  And

7  we are fairly confident that he had one at least in January,

8  February, April of last year.

9          THE COURT:  It used to be required, when you

10  became an American, that you turned in your former

11  passports.

12          The particular group that always had difficulty

13  with this were Iranians who became Americans, because you

14  can't travel back to Iran on an American passport very

15  easily.  So they would always try to keep their Iranian

16  passports, in contravention to the order to surrender those.

17          The whole issue of dual citizenship is very

18  murky.  It's hard for me to understand how one can be a dual

19  citizen, when the oath you take when you become an American

20  citizen by naturalization is that you renounce and adjure

21  all fidelity, loyalty and the like to any foreign prince,

22  potentate, et cetera.  In other words, you give up your

23  allegiance.

24          The US can never stop another country from

25  recognizing a person as a citizen, if that person is an

1    American.  In other words, some country, Ireland, wants to

2    say, "We will recognize Mr. Eisinger as an Irish citizen,

3    the US can't do anything about that.  It's none of our

4    business.

5              But when you take the oath that you give up

6    your allegiance, as far as he United States is concerned,

7    you are an American, and only an American.

8              This has come up sometimes in situations where

9    people try to serve in the armed forces of another country.

10   All right.

11             The bottom line is, we don't have his Nigerian

12   passport.  He says that he has misplaced it, doesn't have it

13   any more.

14             His American passport is in custody.  He

15   doesn't have that.  Is that right?

16             ATTORNEY EISINGER:  That's correct, your Honor.

17             THE COURT:  And the government feels he may yet

18   have a Nigerian passport, because he traveled there

19   recently, although he did so on an American passport, when

20   he came back here.  What passport he used when he arrived in

21   Nigeria is another matter.

22             Mr. Iweanoge says it's really very difficult

23   for him to get out of this country.  He has explained all

24   the reasons why that is so.

25             All right.  Just focusing on the issue of the

1   amount that -- or what he is facing by way of a sentence and

2   anything else I mentioned, do you have anything further you

3   want to add, Mr. Iweanoge?

4           ATTORNEY IWEANOGE:  Judge, even with the

5   government's best effort in terms of the cancellation of the

6   loss, I still do not believe that they will be able to put

7   on a case that will even be close to the amount.

8           And with the disparity that your Honor alluded

9   to in terms of the sentencing of the other defendants, that

10  will also be an issue under the 3553 factors.

11          But most importantly, Judge, the law is, of

12  course, that you are responsible for whatever the other

13  coconspirators do.  But then --

14          THE COURT:  Well, you are not responsible for

15  everything they do, but you are -- in the sentencing scheme,

16  you are chargeable with the losses or amount of the intended

17  losses that were reasonably foreseeable by you as a member

18  of the conspiracy.

19          I think I have gotten that right, haven't I?

20          ATTORNEY IWEANOGE:  Yes, you did, Judge.

21          THE COURT:  All right.

22          ATTORNEY IWEANOGE:  And using that analysis,

23  the Court got it exactly right; exactly right.  And using

24  that analysis, Judge, the foreseeability test is not even

25  going to be close to the $2.6 million that the government

1    alludes.

2          Because their own witness says, Mr. Q -- no, I

3    can't call him the initial -- Abel Nnabue, said that he saw

4    my client making two calls.  And that's all he testified to.

5          And then when I then cross-examined on those

6    two calls, when was the first one, he said that it was

7    sometime December or January.

8          And then when I then reminded him that in

9    December or January of that year, that my client was not in

10   the country, he said, "Oh, yeah, yeah, you are right.  He

11   traveled.  That's why I cannot say it's between this

12   period."

13         In other words, if you look between the time

14   period of this incident that happened in the Eastern

15   District of Virginia with the sentence, Federal Credit Union

16   and the State Department Federal Credit Union, Judge, he

17   wasn't even around.

18         And then let's assume that you say that the one

19   that happened on 9/26 in Miami, Florida, and Scottsdale,

20   Arizona, with Mr. Fraser and Mr. Frazier, the two Fraziers,

21   Judge, that's not even in the Eastern District of Virginia.

22   But then assuming that it's still part of this conspiracy,

23   Judge --

24         THE COURT:  Well, it wouldn't matter where it

25   was --

1          ATTORNEY IWEANOGE:  Absolutely, Judge.  If you

2     look at the amounts involved and use the foreseeability

3     test, Judge, that puts the numbers at, I will say, more than

4     400,000, but less than a million dollars.

5          THE COURT:  All right.

6          ATTORNEY IWEANOGE:  So, with respect to that,

7     Judge, the numbers are not as high.

8          In terms of the leadership role, Judge, even

9     the testimony of their own witnesses doesn't even ascribe

10    any leadership role.

11         Of course, at sentencing, we will put on the

12    agents who talked to these people, and we will talk about

13    who is closest to Toby, who has talked to Toby.  I mean, if

14    the government never sought a leadership role for Ezenwa

15    Onyedebelu, who was talking to Toby, who has been a

16    fugitive, and then who is supposed to his right-hand man,

17    and then not talking to Abel, Q, who he had done prior -- I

18    mean deals in the past with, and these individuals are in

19    Nigeria, and never did any deals together, and then Abel

20    Nnabue received a $100,000 cash in Nigeria -- if those

21    people are not held to a leadership role, I cannot see --

22         THE COURT:  How much money you get doesn't

23    dictate whether you have a leadership role or not.

24         ATTORNEY IWEANOGE:  Absolutely, Judge.  What

25    I'm saying is, I cannot see, based on the 302s that I have

1    read, even from Precious Matthews, even from Agent Nail,

2    Etienne, the report from Detective Charles Pak, everything

3    that I have read in this case and every law that I know

4    governing leadership role, Judge, I do not see any witness,

5    and how government can possibly even make a case for either

6    a leader, organizer, supervisor, manager or managerial role

7    in this case, Judge.

8              THE COURT:  All right.  Just a moment.

9              Let me see either the indictment or the verdict

10   form.

11             (Pause.)

12             THE COURT:  What's the substantive offense

13   provision?

14             Is it 1344?

15             ATTORNEY EISINGER:  Yes, it is --

16             ATTORNEY IWEANOGE:  Yes.

17             ATTORNEY EISINGER:  -- your Honor.

18             THE COURT:  All right.

19             (Pause.)

20             THE COURT:  All right.  The matter is before

21   the Court on the defendant's -- or the government's request

22   that this defendant be remanded, and the defendant's

23   objection to that.

24             The defendant has been convicted of engaging in

25   a conspiracy to commit bank fraud.  The government argues

1    that he should be detained because he is a risk of flight.

2              The government argues that he is a risk of

3    flight because he has been known to travel recently to

4    Nigeria.  He's an American citizen, although he came from

5    Nigeria.  He became an American citizen in 2005.  He has

6    traveled to Nigeria since then in connection -- or together

7    with other members of this conspiracy in 2007.

8              And the government suggests that he would be

9    likely to flee.  And the government also points out that he

10   hasn't been truthful.

11             The defendant points out that he has been

12   compliant, and that he has been on GPS monitoring.

13             In fact, I don't think he has been on GPS

14   monitoring, because they don't have that in New York.  I

15   think what --

16             ATTORNEY EISINGER:  That's correct, your Honor.

17             THE COURT:  What is it that they do have in New

18   York?

19             He does wear a bracelet, but it isn't GPS

20   monitoring.  It's something else.

21             ATTORNEY IWEANOGE:  Judge --

22             THE COURT:  It's electronic monitoring.

23             ATTORNEY IWEANOGE:  Electronic -- oh.

24             THE COURT:  It's not GPS monitoring.

25             ATTORNEY IWEANOGE:  Oh, okay.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1      THE COURT:  They don't have GPS monitoring in

2  New York.  He's on electronic monitoring --

3      ATTORNEY IWEANOGE:  Okay.

4      THE COURT:  -- which means that he can't go, he

5  can't leave his home, or the telephone, within a certain

6  radius of his telephone, unless he has permission to do so.

7      But once he leaves, he can go anywhere and they

8  can't track him, because it isn't GPS monitoring.

9      In other words, if he said he was going out

10  shopping for a while, and they said, "Okay, go," they don't

11  know where he goes.  Because they don't have GPS monitoring

12  in New York, to my surprise, even though that's what I

13  ordered.

14      They do have electronic monitoring.  So they

15  would know that he had left his house at a particular time,

16  but they wouldn't know anything other than that.  And they

17  would know where he told them he was going.

18      Now, to continue, he has been otherwise

19  compliant.  He has appeared here.  He did not flee.  And the

20  situation is only different now that he has been convicted.

21      The government contends that he is facing up to

22  a 10-year sentence.  The government suggests that the loss

23  attributable under 2B 1.1 would be in excess of a million --

24  I think you said 2 million 7?

25      ATTORNEY EISINGER:  In excess of 2.5 million,

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1     your Honor.

2                THE COURT:  All right.  Then that would make

3     it -- that still wouldn't put him at ten years.  But if you

4     added three levels for leadership -- is that what you are

5     saying?

6                ATTORNEY EISINGER:  Correct, your Honor, plus

7     the two-year -- or the two points for the "out of this

8     country/sophisticated means."

9                THE COURT:  All right.  That might get it --

10               ATTORNEY EISINGER:  And then --

11               THE COURT:  That might get it close to that,

12    but it may not.  As Mr. Iweanoge pointed out, he doesn't see

13    how the trial testimony establishes 2.5 million foreseeable

14    to him.  And in that regard, he's correct.

15               But of course, the government isn't limited to

16    the trial testimony.  At sentencing they can offer

17    additional testimony to establish the loss attributable to

18    the conspiracy, and why he would -- why it would be

19    reasonably foreseeable to him.

20               But I think it is fair to say that at this

21    time, even by Mr. Iweanoge's reckoning, that he faces

22    somewhere between four to six years, even if there aren't

23    any enhancements.  And there are going to be enhancements;

24    at least five years.

25               So he does face a substantial sentence, which I

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    will take into account.

2            So we come back to the standard that the Court

3    has to reply in 3143(a).  In 3143(a) the Court is required

4    to follow the following provision:

5            A person who has been found guilty of an

6            offense and who is awaiting imposition or

7            execution of sentence, other than a person for

8            whom the government does not recommend a term of

9            imprisonment, that person must be detained --

10   here, the government does not recommend that there be no

11   term of imprisonment.  So...

12           ...that person must be detained, unless the Court

13           finds by clear and convincing evidence that the

14           person is not likely to flee or pose a danger to

15           the safety of any other person or the community if

16           released under 3142(b) or (c) --

17   that is, under conditions.

18            So the question is whether there is clear and

19   convincing evidence that he will not flee.

20            Now, I asked the court reporter to find the

21   portion of this hearing in which I denied an effort by the

22   government to have him remanded prior to trial, based on his

23   receiving a ticket in New York for driving without a license

24   and some other matters, and also for communicating with a

25   coconspirator when he was not permitted to do so.

1          The driving matter, the license matter, I made

2   clear, was not a significant matter.  I would not have

3   remanded Mr. Obilo for that.  It's easy to understand why he

4   didn't -- may not have understood it, and he should have

5   gotten a New York license, which he now has.

6          But I was very concerned about whether he had

7   violated the Court's order about talking to other

8   coconspirators.  Because if so, then I would remand him.  If

9   I can't rely on him or trust him to follow the Court's

10  orders, then he should be remanded.

11          He testified at that hearing that he had

12  received a call from Chikezie, or whatever his name is, and

13  that Chikezie had said, "Someone here wants to talk to you."

14  And then it turned out to be Onyedebelu.

15          And he said that as soon -- once he knew that

16  it was Onyedebelu, he said, "I can't talk to you," and that

17  was the end of the matter.  And he had no further contact

18  with him.

19          Onyedebelu tells a different story.

20  Onyedebelu, under oath here at the trial, testified that he

21  was with Chikezie.  Chikezie made a call, handed him the

22  phone, and it was Mr. Obilo on the other end; and that

23  Mr. Obilo asked him -- well, Mr. Rodriquez read that, but

24  it's a different story.  Mr. Onyedebelu says, "Why are you

25  testifying against me," or, "Are you testifying against me?"

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1           He said, "No."

2           I think he said something else.

3           What was it, Mr. Rodriquez?

4           Can you read that except once more, so I have

5    that clearly in mind?

6               (The reporter read the record as requested.)

7           THE COURT:  That's clearly at odds with what

8    Mr. Onyedebelu said, because he said, "Are you going to

9    testify against me," and some other thing.

10          What was it, Mr. Eisinger?

11          ATTORNEY EISINGER:  I believe, your Honor, that

12   he was asked if he was going to testify, and he said, "No."

13          On cross-examination he was asked, "Why did you

14   lie about testifying?"

15          And he said, "I didn't lie.  At that time, I

16   hadn't been called to testify."

17          THE COURT:  All right.

18          ATTORNEY IWEANOGE:  Judge, for the record, to

19   correct that, it wasn't on cross-examination.  It was still

20   on direct examination that he said, he said that.

21          THE COURT:  All right.  All right.  To me, it

22   doesn't matter.

23          Clearly, those stories are add odds, and they

24   give me great concern -- some concern about whether

25   Mr. Obilo obeys court orders.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1            In the end, I do not find by clear and

2  convincing evidence that he would not flee.  I don't find he

3  is a danger to the community, but I cannot find, on this

4  record, clear and convincing evidence that he would not

5  flee, given all the facts and circumstances.

6             Accordingly, Mr. Obilo is remanded to the

7  custody of the United States Marshals.

8             All right.  I thank counsel for your

9  cooperation.

10            I will note for the record that Mr. Iweanoge's

11  performance in court indicates that he represented his

12  client fully and effectively and zealously.

13            Anything further on behalf of the government or

14  the defendant?

15            ATTORNEY EISINGER:  No your Honor.

16            ATTORNEY IWEANOGE:  Thank you, Judge, for

17  accommodating me this morning, as well.

18            THE COURT:  Court stands in recess.

19            (Court recessed at 11:58 a.m.)

20                      ---

21

22

23

24

25

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

CERTIFICATE OF REPORTER

I, MICHAEL A. RODRIQUEZ, an Official Court Reporter for the United States District Court, in the Eastern District of Virginia, Alexandria Division, do hereby certify that I reported by machine shorthand, in my official capacity, the proceedings had and evidence adduced upon the jury trial in the case of UNITED STATES OF AMERICA v. HENRY Obilo.

I further certify that I was authorized and did report by stenotype the proceedings and evidence in said jury trial, and that the foregoing pages, numbered 1 to 56, inclusive, constitute the official transcript of said proceedings, Volume 3, as taken from my machine shorthand notes.

IN WITNESS WHEREOF, I have hereto subscribed my name this _____ day of _____, 2010.

_____
Michael A. Rodriquez, RPR/CM/RMR
Official Court Reporter