1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

- - - - - - - - - - x
                                 :
UNITED STATES OF AMERICA    :
                                 :
        -vs-                     :    DOCKET NO. 1:09cr47
                                 :
HENRY OBILO,                     :
                                 :
            Defendant.           :
                                 :
- - - - - - - - - - x

                          District Courtroom 900
                          United States Courthouse
                          Alexandria, Virginia

                          Friday, September 4, 2009

        The above-entitled matter came on to be heard before

THE HONORABLE T. S. ELLIS, III, Judge, in and for the

United States District Court for the Eastern District of

Virginia, in the United States Courthouse, Alexandria,

Virginia, beginning at 10:11 o'clock a.m.

        APPEARANCES:

                On Behalf of the United States:

                        JOHN EISENGER, ESQUIRE
                        Assistant United States Attorney

                On Behalf of the Defendant:

                        JOHN O. IWEANOGE, II, ESQUIRE

\* \* \* \* \* \* \* \* \* \*

# C O N T E N T S

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---------|--------|-------|----------|---------|
| HADLEY ETIENNE | 25 | – | – | – |

**RUDIGER, GREEN & KERNS REPORTING SERVICE**
CERTIFIED VERBATIM REPORTERS
4116 LEONARD DRIVE
FAIRFAX, VIRGINIA 22030
(703) 591-3136

1                    P R O C E E D I N G S

2                    THE CLERK:  Case Number 09-Criminal-47, United

3      States of America versus Henry Obilo.

4                    Will Counsel please state your appearance for

5      the record?

6                    MR. EISENGER:  Good morning, Your Honor; John

7      Eisenger.

8                    THE COURT:  All right, Mr. Eisenger, you are

9      here for the Government?

10                   MR. EISENGER:  Yes, Your Honor.

11                   THE COURT:  Mr. Iweanoge, you are here for the

12     Defendant?

13                   MR. IWEANOGE:  Yes, Judge.  Good morning, Your

14     Honor.

15                   THE COURT:  Good morning.

16                   And Mr. Obilo is now present in the Courtroom.

17                   This matter is before the Court for

18     sentencing, this Defendant having been found guilty on the

19     basis of a plea of engaging in a conspiracy to commit bank

20     fraud.

21                   This Defendant engaged with others in

22     obtaining identity information of depositors of various

23     banks, then impersonating these depositors in telephone

4

1    calls and other communications with banks to require or to

2    request that these banks wire funds to various other bank

3    accounts.  This Defendant was involved in making those

4    calls.

5              He also learned this scheme from the

6    individual who is currently the leader and who's currently

7    a fugitive, Mr. Onwuhara, and then he really developed his

8    own side scheme in Miami, on the side.

9              Do I have that about right, Mr. Eisenger?

10             MR. EISENGER:  That's correct, Your Honor.

11             THE COURT:  And he is before the Court now for

12   sentencing.

13             Mr. Iweanoge?

14             MR. IWEANOGE:  Yes, sir?

15             THE COURT:  Have you had an adequate

16   opportunity to review the pre-sentence report and to

17   review it with Mr. Obilo, your client?

18             MR. IWEANOGE:  Yes, we have, Judge.

19             THE COURT:  Mr. Obilo, have you had an

20   adequate opportunity to review the pre-sentence report and

21   to review it with your counsel, Mr. Iweanoge?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  And are you fully satisfied with

5

1    the advice and counsel he has provided to you in this

2    case?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  All right; you may be seated.

5              (The Defendant complied with the request.)

6              THE COURT:  Mr. Iweanoge, I have your position

7    paper.  The first thing you object to is whether he should

8    be held accountable for $2.7 million?

9              MR. IWEANOGE:  That's correct, Judge.

10             THE COURT:  And, Mr. Eisenger, you think he

11   should be held accountable for how much?

12             MR. EISENGER:  We believe that he should be

13   held for the $2.7 million that he was directly responsible

14   for, but we want to note that given his leadership

15   position in this scheme, we feel that he deserves a

16   slightly higher sentence, maybe something at the high end

17   of the guideline range, because of his knowledge of the

18   overall scheme.

19             THE COURT:  Well, the overall scheme involved

20   much more than $2.7 million, didn't it?

21             MR. EISENGER:  Correct, Your Honor.

22             THE COURT:  How much?

23             MR. EISENGER:  The figures we have are just

1    under $11 million in actual losses and approximately $36

2    million in attempted losses.

3            THE COURT:  And intended losses, of course,

4    are pertinent under the guidelines.

5            MR. EISENGER:  Correct, Your Honor.

6            THE COURT:  All right.

7            Now, Mr. Iweanoge --

8            MR. IWEANOGE:  Yes, Judge.

9            THE COURT:  -- you point out that he is

10   charged with more than Onyedebelu, more than Paula Gibson.

11           But their conduct is different, isn't it?

12           MR. IWEANOGE:  Judge, not necessarily.  The

13   Government sees this case a little different, quite

14   obviously, than I see it, Judge, because I know Your Honor

15   recalls the testimony of the witnesses, including Paula

16   Gibson, who said that "We saw him on two occasions using

17   the laptop."

18           But then, most importantly, Judge, Detective

19   Pak testified in the Government's case, everybody else --

20   there was money coming in either through West Indies or

21   from Djakarta, Indonesia, going to every participant that

22   is charged in this case.  The only person they could not

23   trace any money going from any of the co-conspirators to

7

1    is my client, Mr. Obilo.

2                    THE COURT:  All right.  Let me hear from the

3    Government.  We will take these issues one at a time.

4                    What is -- before we get to -- actually, Mr.

5    Iweanoge, let me hear also on leadership role from you for

6    your client.

7                    MR. IWEANOGE:  Judge, my client -- I don't see

8    the facts that makes my client a leader in this

9    enterprise.  As a matter of fact, the Government is well

10   aware, during the debriefing sessions with Paula Gibson,

11   Abel Nnabue, Onyedebelu, that testified they were the ones

12   -- if anybody should be getting any leadership role

13   enhancement in this case, it should be either Ezenwa

14   Onyedebelu, who was directly associated with Mr.

15   Onwuhara --

16                   THE COURT:  What about this whole side -- he

17   had his own operation going in Miami.

18                   MR. IWEANOGE:  Judge, the Government makes

19   this allegation, that there is something going on in

20   Miami, but that still ties into Onwuhara, and it mentions

21   the name of an individual who is still walking around in

22   Miami, uncharged, in this particular -- uncharged with any

23   offense whatsoever.

8

1          It defies logic that you have such a credible

2     and reliable case against this alleged individual that is

3     still walking the streets, free, and then if you look at

4     the position --

5          THE COURT:  You are talking about Obasuyi?

6          MR. IWEANOGE:  Yes, Judge.

7          And then, if you look at the loss calculation,

8     the strangest part is, Judge, that if you look on Page 9

9     of their position, Subparagraph K, after claiming that the

10    attempted loss is 700 then they follow -- it's like they

11    added, "It is unknown if the attempted theft was

12    successful," and then it goes on --

13         THE COURT:  Well, you don't have to succeed in

14    order to be charged with the money.

15         MR. IWEANOGE:  Absolutely, Judge, and it

16    raises an issue which is implicit.  As Lyndon Johnson

17    said, Judge, when a man or woman is talking to you, know

18    what he or she is saying, but what he or she is not

19    saying.  If you are not able to confirm if the money

20    actually --

21         THE COURT:  Well, you are the first person to

22    have quoted Lyndon Johnson in this courtroom.  I hope you

23    are the last.

9

1          MR. IWEANOGE:  Judge, I guess I will choose

2     Ronald Reagan.

3          THE COURT:  Stick with Abraham Lincoln.

4          MR. IWEANOGE:  Okay, Judge, I will stick with

5     Abraham Lincoln, Judge.

6          But right makes right, and in that frame let

7     us to do our duty as we understand it.  If the Government

8     does its duty as they understand it Judge, they would not

9     be unsure if the attempt was successful or not successful,

10    because for you to claim that the amount is the loss

11    amount attributable to my client, then you should be in a

12    position to tell the Court if it was successful or not

13    successful.

14         But then it goes on to the next paragraph

15    which is J, Judge, still on Page 9.  "A third cannot be

16    confirmed.  It is believed this was the attempted

17    transfer."

18         In other words, what we have is conjecture,

19    allegations, but there is not proof to back it up.

20         Then you go to H.  Authorities believe that

21    all of this money was withdrawn.  It has not been

22    confirmed.

23         And then, Judge, like the leadership role that

1    the Government claims is -- the testimony of Abel Nnabue

2    was he saw my client on two occasions using the laptop,

3    and then the Government attaches an interview of my client

4    coming back from Nigeria that Paula Gibson told them at

5    the debriefing he was with them, hanging out.

6              Then Abel Nnabue, on cross examination, when

7    he said that in December that my client -- he saw him in

8    December, working on a laptop, and then I said, "Isn't it

9    true that in December, he was in Nigeria?  He wasn't even

10   here?"

11             And then he said, "Oh, yeah, yeah, yeah, yeah.

12   He was in Nigeria."

13             Suffice it to say, without re-litigating the

14   case, Judge, if you have the leadership role, it is

15   amazing that Abel Nnabue orchestrated what happened here

16   in the Eastern District of Virginia, was once they were

17   receiving funds, how can you be a leader, organizer, or

18   manager or supervisor, but then you're not getting paid?

19             Even Brandy Anderson, Abel Nnabue's girlfriend

20   or fiancee or wife, Judge -- I have forgotten -- even got

21   $25,000 on one occasion and on another I believe $10,000

22   or so.  And Your Honor took into consideration her limited

23   role in giving her a sentence that is different from the

1    other defendants.

2              But then here you have the detective, the lead

3    detective in this case, saying that no money is traceable

4    to my client.  So, what leadership role could he assume or

5    be in and then he is not entitled to money or calling

6    shots?

7              So, Judge, I don't see the leadership role

8    enhancement in this particular case because there is

9    nothing about the testimony that was presented to this

10   Court that shows that he assumed or ever exercised any

11   money -- direct control over any money.

12             THE COURT:  You also object to the number of

13   victims for the same reasons?

14             MR. IWEANOGE:  Judge, I objected -- to be

15   candid with the Court, I objected to the number of

16   victims, and in reading the Government's position with

17   respect to the sentencing in this case, Judge, I will not

18   have credibility to stand before Your Honor, knowing that

19   the other Plea Agreements as the Government points out

20   that I am arguing to be in disparity with what the

21   Government is seeking in this case, that there were ten or

22   more victims in those particular cases as well.  And in

23   addition to that, Judge, that the sophisticated means was

1    also attributed to the other defendants.

2              So, I cannot have the credibility to stand

3    before Your Honor and oppose --

4              THE COURT:  What about the obstruction of

5    justice?

6              MR. IWEANOGE:  Judge, the obstruction of

7    justice, I still oppose, Judge.  The reason that I oppose

8    the obstruction of justice, Judge, that -- just like

9    somebody walking in from England and saying "to-mah-to,"

10   and then an American saying, "to-may-to" -- Judge, at the

11   end of the day, they are saying the same thing, but then

12   with a different accent.

13             What I mean by that is, Judge, that we have a

14   situation where there was a conversation allegedly between

15   two people.  What is not in contention is how it

16   transpired.  My client is in New York.  Mr. Onyedebelu is

17   in Dallas, Texas.  My client, who knows his number, who's

18   trying to intimidate and threaten and cause him not to

19   testify in this case, did not pick up the phone to call

20   him.

21             As a matter of fact, to the contrary, the

22   Government was advised at a debriefing of Onyedebelu --

23             THE COURT:  So there is really a conflict

13

1   between Onyedebelu's version of that event and your

2   client's version.

3          MR. IWEANOGE:  Judge, yes.  The only place

4   that they differ and which I will argue to the Court is

5   not material is in respect to what was said.  As the Court

6   is well aware, Mr. Onyedebelu is the same individual -- in

7   other words, the Government is arguing and asking the

8   Court that the Court should credit his own account of what

9   happened, as opposed to that of my client.

10          And then the very reason is because he is --

11  it's like I could find no other reason other than because

12  he is cooperating with the Government, to which I said to

13  them, Judge, in my position papers, "This is the same

14  individual that you were talking to that was speaking with

15  Onwuhara for quite an extended period of time after he

16  started cooperating with you and never brought that to

17  your attention."

18          So, it's not like he has the best credibility

19  to be put up against my client to have him or have this

20  Court believe his account of what happened.

21          And as the Government may argue when they

22  stand up, because a jury convicted him -- Judge, but even

23  a jury convicting him has nothing to do with whether the

14

1    jury believed that account.

2              But then most importantly in that regard,

3    Judge, if I may, is that what defies logic in Mr.

4    Onyedebelu's theory of what was said is my client said to

5    me, "Are you going to be testifying against me?" and then

6    to which he says "No."

7              And then he says, "If you are not going to

8    testify against me, then I will not be found guilty."

9              Judge, that doesn't even make sense.  The

10   reason is, the Government has a Plea Agreement and

11   cooperation with Precious Matthews, Abel Nnabue, Ms.

12   Gibson, and then it is like there is nothing that Mr.

13   Onyedebelu testified to on the stand under oath that the

14   other people did not testify to.

15             So there was -- it's like it defies logic that

16   somebody would say that if he doesn't testify, "then I

17   will not be found guilty," knowing the extreme line of

18   people who have pled guilty with cooperation and agreement

19   with the Government, and that these people are at the beck

20   and call of the Government to testify.  So it doesn't make

21   sense that my client would say, "Okay, if you are not

22   going to testify -- "

23             THE COURT:  It doesn't make sense that they

15

1      commit crimes, either, but they do.

2                  MR. IWEANOGE:  Absolutely, Judge.

3                  THE COURT:  So, the argument that it doesn't

4      make sense doesn't make sense.

5                  MR. IWEANOGE:  Yes, Judge.  In that regard,

6      Judge, it should be tipped in this case in favor of the

7      Defendant, because the only other person that could have

8      told us what was talked about, at least the present sense

9      impression of Mr. -- I think it is --

10                 THE COURT:  I think the answer is that there

11     is a conflict between Onyedebelu and Obilo.

12                 MR. IWEANOGE:  Yes, Judge.

13                 THE COURT:  And I have to make that judgment.

14                 MR. IWEANOGE:  Yes, Judge.

15                 THE COURT:  All right.

16                 MR. IWEANOGE:  I ask the Court to also take

17     into consideration in making that judgment that when my

18     client appeared before Your Honor for that hearing, he had

19     a choice not to take the stand, but he wanted to recount

20     for the Court what happened, not only about that but also

21     with respect to the driver's license which the Government

22     claimed that was an issue.

23                 And if Your Honor also recalls at the April 1

1   hearing, the Government even wanted you to also revoke him

2   for talking to Chikezie Onwumere, whose case was

3   dismissed, and Your Honor said, "How can he not talk to

4   somebody who is not even a co-defendant in the case?"

5              So, I ask that the obstruction should be

6   resolved in favor of the client.

7              THE COURT:  All right.

8              That covers all of the objections, doesn't it,

9   Mr. Iweanoge?

10             MR. IWEANOGE:  Just one moment.

11             (Mr. Iweanoge examined a document.)

12             Restitution.  I believe that the only other

13   issue is the restitution, Judge, but I guess --

14             THE COURT:  All right.  That will be taken

15   care of, I think, when I determine what he should be

16   charged with.

17             Mr. Eisenger, I have your brief as well.  With

18   respect to the amounts that he should be charged with as

19   either directly or part of the conspiracy, reasonably

20   foreseeable or intended loss, you set out in your brief a

21   number of these that add up to $2.7 million.

22             MR. EISENGER:  Correct.

23             THE COURT:  Now, some of this is already in

17

1    the trial record, but some is not.

2                    MR. EISENGER:  Correct, Your Honor.

3                    THE COURT:  Do you have evidence today that I

4    need to hear?

5                    MR. EISENGER:  I can get an agent to testify

6    about those losses, if you would like.

7                    THE COURT:  Is he here?

8                    MR. EISENGER:  Yes, he is, Your Honor.

9                    THE COURT:  Well, I think that's necessary.

10                   Let me deal with other matters.  So, I will

11   hear that evidence first.

12                   I am going to overrule the objection as to

13   victims and sophisticated means.  I think the Probation

14   Officer's conclusion in that regard is correct.

15                   I am also going to overrule the obstruction of

16   justice objection.  I heard the testimony of Mr. Obilo and

17   Mr. Onyedebelu.  I find the testimony about this encounter

18   by Mr. Onyedebelu to be more credible, Mr. Obilo's to be

19   not credible, and therefore I find that incident is an

20   incident that qualifies, under 3C1.14, an obstruction of

21   justice enhancement.

22                   I don't rely on his being untruthful to the

23   pre-trial services officer or to the agents about his use

1    of drugs or alcohol.  I don't rely on that.

2              I do rely on his testimony under oath during

3    his supervised release hearing in April, and I think that

4    was untruthful.  I think Mr. Onyedebelu had it right, and

5    I think there was corroboration of that as well from the

6    agent.

7              In any event, even without that, I find Mr.

8    Onyedebelu's version of the events to be a truthful

9    statement of what occurred.

10             So, that leaves us now with both restitution

11   and the amount for which he should be charged.

12             Let's turn to your brief for a moment so that

13   we are clear, and we can move this matter along.

14             MR. EISENGER:  The results of the restitution

15   -- I'm sorry.  The results of the leadership role, Your

16   Honor?

17             THE COURT:  Oh, yes.  The leadership role

18   largely comes out of not just his role in the Onwuhara

19   matter, but in his side operation.

20             MR. EISENGER:  Correct, Your Honor.

21             THE COURT:  Although he did pay Onwuhara some

22   money out of that as well, didn't he?

23             MR. EISENGER:  Correct, Your Honor, and part

19

1    of our argument is that he's keeping approximately seventy

2    percent of those profits.

3            THE COURT:  And thirty percent went to

4    Onwuhara?

5            MR. EISENGER:  Correct, Your Honor.  For most

6    of the other defendants, we are looking at something like

7    ten percent for Paula Gibson, or maybe thirty to fifty

8    percent for people like Abel Nnabue or Ezenwa Onyedebelu.

9            THE COURT:  What is the -- where is Obasuyi?

10           MR. EISENGER:  He is the co-leader with Mr.

11   Obilo.  He was originally charged in this District, but

12   based on the amount of information we had tying him to

13   Onwuhara, most of that came through Mr. Obilo, so we

14   decided to drop the charges here, awaiting the verdict and

15   the sentencing here, and then we are going to bring the

16   charges on both him and Mr. Obilo down in Miami for a side

17   deal.

18           THE COURT:  That is, the fact that they were

19   operating this other scheme down there, with thirty

20   percent of it going to Onwuhara?

21           MR. EISENGER:  Correct, Your Honor.

22           THE COURT:  Now, he clearly was a leader

23   there.

1          MR. EISENGER:  Yes, Your Honor.

2          THE COURT:  Do you contend he was a leader in

3    the operation that he was tried for here?

4          MR. EISENGER:  We believe that he was getting

5    more money than the other defendants in this case, and

6    that is what Onyedebelu testified to at trial, that he was

7    getting the seventy percent, and that essentially he was

8    just getting Social Security information from Onwuhara.

9          THE COURT:  That was his specialty, was to get

10   the identifiers, the Social Security information, and

11   provide that to the conspirators.

12         MR. EISENGER:  Correct, Your Honor.

13         And the issue of the money -- the problem

14   there is that we simply don't have bank account

15   information for Mr. Obilo.  A lot of his side deals that

16   were going on against Bank of America, the money wasn't

17   being shipped overseas like it was in our case, but,

18   instead, they were pulling it out of debit cards at $7,500

19   or more a day.  So, the money wasn't shipped someplace and

20   going back from Djkarta to Mr. Obilo.  Instead, he was

21   pulling it directly out of bank accounts and then shipping

22   some of it, via his courier, which was Onyedebelu, back to

23   Onwuhara, or vice versa.

21

1          THE COURT:  So, distilled to its essence, what

2     is the Government's contention with respect to the three-

3     or four-level enhancement he should receive for a

4     leadership role?

5          MR. EISENGER:  Well, Your Honor, we believe

6     that Onwuhara deserves the four points, that he was an

7     overall leader of this conspiracy in Dallas; that there's

8     other people in the country, including one who is

9     currently being prosecuted by the New Jersey prosecutor,

10    that were also at that same level, but that Mr. Obilo was

11    a little bit lower than that.  He relied on Mr. Onwuhara

12    for information, but otherwise ran his own scheme, and

13    therefore, that he should get the three points rather than

14    the four points.

15          And that's the same reason we feel that

16    although -- because he was more aware of the depth of this

17    scheme, that he should be held accountable for the high

18    end of the guideline range, but he shouldn't be held

19    accountable for the relevant conduct of everyone in this

20    conspiracy, including Onwuhara, which would give him the

21    overall losses of more than $10 million and overall

22    attempted losses of more than $30 million.

23          THE COURT:  All right.  I am going to hear

22

1    testimony in this, but I am going to pass it for the

2    moment and then hear testimony.  You have one agent?

3              MR. EISENGER:  Correct, Your Honor.

4              THE COURT:  And if I look at your brief,

5    you've got losses identified in Subparagraphs A through --

6              MR. EISENGER:  K, I believe, Your Honor.

7              THE COURT:  A through K.

8              Now, when we reconvene this matter, I am going

9    to ask you which of those matters I heard testimony on at

10   trial and which the agent is going to address.  Or, can

11   you tell me that now?

12             MR. EISENGER:  I can go through those now,

13   Your Honor.

14             THE COURT:  All right.

15             MR. EISENGER:  Under A, this was a SpoofCard

16   call that was played at trial.

17             THE COURT:  All right.

18             MR. EISENGER:  Oh, I'm sorry; it's a SpoofCard

19   call wasn't played at trial.  A and B were both SpoofCard

20   calls that were part of this conspiracy but were not

21   played at trial.

22             C was not.

23             THE COURT:  But the agent who is testifying

23

```
 1   will have heard all of this?

 2              MR. EISENGER:  Correct, Your Honor.

 3              THE COURT:  And how can the agent testify that

 4   it is Obilo?

 5              MR. EISENGER:  Because the agent was actually

 6   at JFK during the interview with Obilo and recognized his

 7   voice, in the same way that Detective Pak was able to

 8   identify his voice.

 9              THE COURT:  What is the name of the agent you

10   are going to produce?

11              MR. EISENGER:  Hadley Etienne.  He's a Special

12   Agent for the FBI.

13              THE COURT:  And did he testify at trial?

14              MR. EISENGER:  No, he did not, Your Honor.

15              THE COURT:  But I take it he was present?

16              MR. EISENGER:  Yes, he was, Your Honor.

17              THE COURT:  Let me do some other matters.  Go

18   through A through K after the recess and tell me which of

19   those were heard at trial and which were not.  It may be

20   that all of them will be -- I will need to hear evidence

21   on all of them.

22              MR. EISENGER:  Yes; there's only two of them

23   that were actually heard at trial, Your Honor.
```

24

1          THE COURT:  All right.  Let me pass this

2     matter.

3          (Whereupon, at approximately 10:34 o'clock

4     a.m., the hearing in the above-entitled matter was

5     recessed, to reconvene at approximately 12:20 o'clock p.m.

6     that same day.)

7          THE COURT:  Call the Obilo matter.

8          THE CLERK:  Case Number 09-Criminal-47, United

9     States of America versus Henry Obilo.

10          MR. EISENGER:  Good afternoon, Your Honor.

11     John Eisenger for the United States.

12          THE COURT:  All right, Mr. Eisenger, you are

13     here on behalf of the Government.

14          Mr. Iweanoge, you are here for the Defendant.

15          Mr. Obilo is back in the courtroom.

16          MR. IWEANOGE:  Yes, Your Honor.

17          THE COURT:  How many witnesses do you plan to

18     present?

19          MR. EISENGER:  Just one, Your Honor.

20          THE COURT:  All right; call that witness.

21          MR. EISENGER:  The Government calls Hadley

22     Etienne, Special Agent of the FBI.

23          THE COURT:  All right; come forward and take

25

 1    the oath, please, sir.

 2              (The witness was then duly sworn by the Clerk

 3    of the Court.)

 4              THE COURT:  All right, sir; take the stand.

 5              (The witness complied with the request.)

 6              THE COURT:  Mr. Eisenger, you may proceed.

 7    Whereupon

 8                        HADLEY ETIENNE

 9    a witness, was called for examination by counsel on behalf

10    of the United States of America, and, having been duly

11    sworn by the Clerk of the Court, was examined and

12    testified, as follows:

13                      DIRECT EXAMINATION

14              BY MR. EISENGER:

15         Q    Will you please state your name and spell your

16    last name for the record.

17         A    First name is Hadley.  My last name is

18    Etienne, E-t-I-e-n-n-e.

19         Q    How are you employed?

20         A    I am employed as a Special Agent with the FBI.

21         Q    And are you one of the case agents on this

22    case?

23         A    Yes, sir.

26

1              THE COURT:  How long have you been an FBI

2      agent?

3              THE WITNESS:  Four-and-a-half years.

4              THE COURT:  Thank you.

5              THE WITNESS:  Thank you, sir.

6              THE COURT:  Next question.

7              BY MR. EISENGER:

8         Q    Are you familiar with the Government's

9      position on sentencing in this case?

10        A    Yes, sir.

11        Q    Can you talk to us about what is in Paragraph

12     A, discussing a SpoofCard call to the account of T.N.

13     Associates on or about December 10th of 2007?

14        A    Yes, sir.  In that particular call, if I

15     remember correctly, it was a call placed through the

16     SpoofCard service where a voice we identified as belonging

17     to Henry Obilo impersonated a Bank of America employee to

18     facilitate the transfer of monies between accounts for the

19     victim.

20        Q    How do you recognize Mr. Obilo's voice?

21        A    I recognize Mr. Obilo's voice from the

22     interview that started at JFK Airport, and also interviews

23     where I heard his voice during the arrest in Miami,

1    Florida.

2         Q     Were you present at his arrest in 2008?

3         A     Yes, sir.

4         Q     In the second paragraph, we have another

5    SpoofCard recording of the account of P.R., on or about

6    December 19th, 2007.

7               Were you also able to identify Mr. Obilo's

8    voice on that call?

9         A     Yes, sir.

10              THE COURT:  Now, just so that I am clear, a

11   SpoofCard, Agent Etienne, is a card that you can buy and

12   use with a cell phone that, when you make a call, you can

13   require or you can have a specific number appear on the

14   Caller ID of the recipient --

15              THE WITNESS:  Yes, sir.

16              THE COURT:  -- indicating that you are making

17   the call from that number when, in fact, you are using a

18   SpoofCard and a cell phone that isn't really that number.

19              Am I right?

20              THE WITNESS:  Yes, sir.

21              THE COURT:  Next question.

22              BY MR. EISENGER:

23        Q     And Paragraph C relates to a cooperating

1   witness who told agents about an attempt by Mr. Obasuyi

2   from USAA Bank.

3         Can you relate what happened in that case?

4   A     Yes, sir.  In that particular case, we had a

5   cooperating witness that had been providing ongoing

6   information on this case.

7         MR. IWEANOGE:  Judge, I am going to object as

8   to the double hearsay.

9         THE COURT:  Overruled.

10        Go ahead.

11        THE WITNESS:  In that testimony, that witness

12  related to the FBI that Henry Obilo and Charles Obasuyi

13  were working on a transaction where they were attempting

14  to wire $800,000 from a USAA account.

15        When we contacted USAA with the date range for

16  that particular transaction, they were immediately able to

17  find that attempted wiring from that account at USAA.

18        THE COURT:  All right.

19        How much money?

20        THE WITNESS:  If I remember correctly, it was

21  $800,000.

22        BY MR. EISENGER:

23  Q     I think we have listed $80,000 to $100,000.

29

1        A        $80,000 to $100,000.  I apologize.

2                MR. IWEANOGE:  Leading, Your Honor.

3                THE COURT:  I beg your pardon?

4                MR. IWEANOGE:  I was going to object, but it

5        is already -- I'll withdraw that.

6                THE COURT:  Did you interview the cooperating

7        witness?

8                THE WITNESS:  Yes.

9                THE COURT:  What was it that the cooperating

10       witness told you?

11               THE WITNESS:  He said that, in his presence,

12       he heard Henry Obilo talking with Tobechi Onwuhara and

13       other members of the group about the transaction that

14       they'd tried or attempted with the USAA bank account to

15       wire that money from the account.

16               THE COURT:  Was it unsuccessful?

17               THE WITNESS:  That is correct.

18               THE COURT:  Did you or the FBI make an

19       assessment as to the reliability of this cooperating

20       witness?

21               THE WITNESS:  Yes, sir.

22               THE COURT:  Did he testify at any trials?

23               THE WITNESS:  No, sir.

30

1          THE COURT:  And -- just a moment.

2          (Pause.)

3          Was the transfer of funds from that account

4    ultimately successful?

5          THE WITNESS:  No, sir.  It was an attempted;

6    it was not successful.

7          THE COURT:  Well, later on, did they try

8    again?

9          THE WITNESS:  For that particular transaction,

10   Your Honor, I don't recall it being successful at USAA.

11         THE COURT:  All right.

12         Next question.

13         BY MR. EISENGER:

14   Q    Was this the one in which they later talked to

15   Mr. Onwuhara and requested his assistance?

16         MR. IWEANOGE:  Objection, Judge; leading.

17         THE COURT:  It is leading, but -- I will

18   overrule it, but your point, Mr. Iweanoge, is taken; that

19   is, that he needed his memory refreshed by the leading

20   question, so I will take that into account.

21         Go ahead; what is your answer?

22         THE WITNESS:  There was an instance, the CW

23   did inform us, where Obilo's group did attempt to do a

31

1   wire transfer that was unsuccessful, and then they met

2   with Tobechi Onwuhara and he did assist them in then

3   completing that wire transfer at a later date.

4           THE COURT:  And is that the one you have been

5   talking about?

6           THE WITNESS:  I'd have to look at my notes

7   again to refresh -- to make sure that that was that exact

8   transfer.

9           THE COURT:  Do you have the notes here?

10          THE WITNESS:  Yes, I do.

11          THE COURT:  All right; let's have those notes.

12  You may use them to refresh your recollection, if you need

13  to.

14          Are these notes of your interview of CW-3?

15          THE WITNESS:  Yes.

16          (A spectator handed documents to the witness

17  for his examination.)

18          THE WITNESS:  Thank you.

19          THE COURT:  Is there a 302 relating to that?

20          MR. EISENGER:  There was a 302 relating to

21  that, but I'm not sure that he has it.

22          THE COURT:  Has it been provided to Mr.

23  Iweanoge?

1           MR. EISENGER:  I believe that one has been

2    provided to Mr. Iweanoge, yes.

3           THE COURT:  Because that was in the case?

4           MR. EISENGER:  I don't believe this one is

5    actually involved in the case because it was --

6           THE COURT:  Don't nod or shake your head, Mr.

7    Iweanoge.  It interrupts the reader and it is irritating.

8           MR. IWEANOGE:  I apologize, Your Honor.

9           THE COURT:  I was never able to refrain from

10   doing it, but I certainly expect lawyers to do it now.

11          MR. EISENGER:  This was not one of the

12   witnesses at the trial, and it related mostly to Mr.

13   Obasuyi, so I am not sure that it was actually provided to

14   him or not.  I know we provided a great number of 302s in

15   our discovery packet, to him and to earlier counsel.

16          THE COURT:  All right.  Go on.

17          Next question?

18          BY MR. EISENGER:

19      Q    Was there eventually payment made to Mr. Obilo

20   or Mr. Obasuyi for this account?

21      A    Yes.

22      Q    How much was that payment?

23      A    May I look at my notes again?

1          THE COURT:  Yes, you may, if you need to look

2    at your notes to refresh your recollection.

3          Is your note a 302?

4          THE WITNESS:  It is a summary of my 302, sir.

5          THE COURT:  All right; go on.

6          THE WITNESS:  (Examining his file.)

7          THE COURT:  Do you have this 302 here, Mr.

8    Eisenger?

9          MR. EISENGER:  I don't have it with me.  I

10   could get it, Your Honor.

11         THE COURT:  Can you send somebody who is

12   sitting here to go get it?

13         MR. EISENGER:  I could try.

14         (Mr. Eisenger conferred with a spectator, off

15   the record.)

16         THE COURT:  All right; go on.

17         BY MR. EISENGER:

18    Q     In Paragraph D, it talks about the access of

19   accounts from a Bank of America account on line.

20         Can you talk about the first one of those,

21   involving the account of R.F.?

22    A     Yes, sir.  Bank records show that the victim's

23   account was accessed from a static IP address registered

34

1    with Comcast that belonged to the subject, Charles

2    Obasuyi.  That IP address was not only used to access

3    Charles Obasuyi's bank account, but also the victim's bank

4    account.

5         Q     And at the time of this, was Mr. Obilo living

6    with Mr. Obasuyi?

7         A     Yes, sir.

8         Q     And relating to Paragraph E, that is another

9    transaction in which -- it was the account of E.P., Inc.

10        A     The same information was also uncovered by the

11   investigators at Bank of America, where it noted that the

12   IP address belonging to the residence and registered to

13   Charles Obasuyi was used to then check Charles Obasuyi's

14   bank account and also, on the same day, the bank account

15   of the victim.

16        Q     And then, in Paragraph F, I believe it is

17   supposed to say September 11, 2007 -- that is a typo on my

18   part -- but accessing the accounts of A.F. and also J.S.

19              Can you talk about that?

20        A     Yes, sir.  Again on that occasion, the Comcast

21   subscriber information, if I am correct, was utilized to

22   access the victim's account.  Monies was transferred from

23   one victim's account into a second victim's account, and

1    then that money was then distributed out through bank

2    cards.

3         Q    Was all the money taken out?

4         A    No, sir.

5              THE COURT:  How do you know that in these

6    situations where it shows an IP address to Obasuyi that

7    Obilo was involved, other than the fact that they were

8    living together?

9              THE WITNESS:  The investigators at the Bank of

10   America simply tied those IP addresses and the fact that

11   the accounts were compromised or utilized from that same

12   IP address.  That's the only information I have.

13             THE COURT:  What evidence do you have that he

14   and Obasuyi were in a conspiracy?

15             MR. EISENGER:  We can talk to that as well,

16   Your Honor.

17             THE COURT:  With this agent or with other

18   agents?

19             MR. EISENGER:  This agent, Your Honor.

20             THE COURT:  Well, let's get to that.  That's

21   the question I just asked him, and he didn't answer it.

22             BY MR. EISENGER:

23        Q    Are you familiar with Charles Obasuyi --

36

1          THE COURT:  I think this might require, Mr.

2   Eisenger, some -- I think you need to give Mr. Iweanoge

3   the 302s, and I need to hear this thoroughly.  If it takes

4   more than one agent, it takes more than one agent, but I

5   can't do it today.

6          MR. EISENGER:  Okay, Your Honor.

7          THE COURT:  So, we are going to do it next

8   week at -- next week at 2:00 o'clock.

9          MR. IWEANOGE:  I'm sorry, Judge?  On 9/11,

10  Your Honor?

11         THE COURT:  No, no, it's not 9/11.  Oh, I'm

12  sorry.

13         MR. IWEANOGE:  No, that's fine, Judge. I'm

14  actually here in this courthouse on another matter.  I was

15  just --

16         THE COURT:  You're right.  It is 9/11 and I

17  was going to hear it at 2:00 o'clock.

18         MR. IWEANOGE:  That's fine, Judge.  I just

19  wanted to make sure that I write down the correct date.

20         THE COURT:  So as many witnesses as you need,

21  because I want proof, if you've got it, that he had this

22  operation going.  And hearsay is admissible; however, I

23  have to make judgments about the quality of the hearsay.

37

1              You've got now testimony from a confidential

2      witness or confidential informant.  I need to know how I

3      can make a judgment about the credibility of that

4      information.

5              I have already ruled on everything but the

6      amount, I believe, and the leadership -- what role.  So,

7      that's what I want to hear evidence on, and as thoroughly

8      as you can produce it, because this is likely to be --

9              And I also have these letters, which I will

10     make a part of the pre-sentence report, relating to Mr.

11     Obilo, which I have read.  But we need to hear thorough

12     evidence on this.

13             All right, Agent Etienne, you may step down.

14             THE WITNESS:  Thank you, sir.

15                                  (Witness stood aside.)

16             THE COURT:  And I will hear further on this a

17     week from today at 2:00 o'clock.

18             You may bring whatever evidence you have, as

19     well.  Are you going to put on your client?

20             MR. IWEANOGE:  Judge, I may or may not.

21             But, for the record, Judge, in case they are

22     not able to appear at the next hearing, the mom, my

23     client's mom -- if you could stand up.

38

1          (A spectator complied with the request.)

2          MR. IWEANOGE:  My client's mom and the sister

3    are here from New York and from Dallas as well.  In case

4    they are not able to be here next week --

5          THE COURT:  Good afternoon.  I am sorry we

6    didn't get to it today.  I have read your letter.  I am

7    now looking at, I believe, Mr. Obilo's mother.

8          MR. IWEANOGE:  Yes, Judge.

9          THE COURT:  And you need to be supplied with

10   some facts, because your letter says he really was in

11   Nigeria for most of this time, and you can't believe that

12   he did these things.

13          The jury found that he did, on a lot of

14   evidence, and you should ask Mr. Iweanoge about what

15   evidence was presented and what defenses were presented.

16   So, you need to have a full understanding of the case.

17          And what I want you to rest assured about is

18   that it has been thoroughly tried and I am going to very

19   carefully consider what sentence he should receive, and in

20   doing so, I will take into account your letter.

21          THE SPECTATOR:  (Nodding head.)

22          THE COURT:  All right?

23          THE SPECTATOR:  Yes, sir.

39

1          THE COURT:  All right.  We will reconvene at

2     2:00 o'clock next Friday.

3          MR. IWEANOGE:  Thank you, Judge.

4                   ***********

5          (Whereupon, at approximately 12:34 o'clock p.m., the

6     hearing in the above-entitled matter was recessed, to

7     reconvene on Friday, September 11, 2009, at 2:00 o'clock

8     p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

40

## CERTIFICATE OF COURT REPORTER

I, SUSAN K. GREEN, a Certified Verbatim Reporter, do hereby certify that I took the stenographic notes of the foregoing proceedings and thereafter reduced the same to typewriting; that the foregoing is a true record of said proceedings; that I am neither counsel for, related to, nor employed by any of the parties to the action in which these proceedings were held; and, further, that I am not a relative or employee of any attorney or counsel employed by the parties thereto, nor financially or otherwise interested in the outcome of the action.

_____/s/_____

SUSAN K. GREEN, CVR-CM-GNSC-HM
Certified Court Reporter
VCRA Cert. No. 0324104